## Dettra *v.* Kestner, Appellant.

*Mutual insurance companies—Fraud—Assessments—Contract.*

A member of a mutual insurance company, who has been induced to become a member by the fraudulent representations of the officers of the company, cannot set up the fraud as a defence to an action by the receiver of the company for assessments, where other persons have subsequently joined the company as innocent third parties.

In such a case, as the rights of innocent third parties have intervened, and it is essential to their protection that a contract, otherwise vitiated by fraud and therefore voidable, should be sustained, equity requires that it be upheld.

Argued March 3, 1892. Appeal, No. 311, Jan. T., 1892, by defendant, George L. Kestner, from judgment of C. P. Berks Co., Feb. T., 1892, No. 59, in favor of B. Frank Dettra, receiver of the Standard Mutual Live Stock Ins. Co. Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Amicable action of assumpsit to recover assessments levied by order of court to pay losses.

The case was tried without a jury under the act of April 22, 1874. At the trial before ENDLICH, J., defendant offered in evidence certified copy of the articles of agreement and application for charter of the Berks County Mutual Live Stock Insurance Company, afterwards the Standard Mutual Live Stock Insurance Company, as the same is on file in the office of the secretary of the commonwealth of Pennsylvania; to be followed by evidence that many of the subscribers whose names appear upon the said articles of agreement, and among whom appear all the directors of the company, did not have insurable property to the value which they have subscribed, and that some of them did not have any insurable property at all; to be followed by evidence, also, that no policies were in fact ever issued by the company to any of the subscribers, although the record books of the company show that such policies were issued. In division "A" the policies are numbered from 1 to 500, inclusive, and in division "B" they are numbered from 1 to 498, inclusive; that from the time of the issuing of letters patent to the plaintiff corporation to within a very short period of the time when application was made to this court for a receiver,

said policies were carried upon the books of the company not marked canceled, although no dues or assessments were paid, and that by resolution of the board of directors of the company on March 4, 1889, all of said policies, to wit, 998 policies, were ordered canceled; to be followed, further, by proof that from time to time the plaintiff company issued circulars in which is set forth the alleged condition of the company in reference to its financial standing as well as the number of policies and the membership of the company, in which circulars it is stated that they had policies numbering a certain amount, in which were included the 998 alleged fraudulent policies which were never issued, and that the defendant was handed some of these circulars by the officers or agents of the company before he applied for the insurance.

Mr. Derr: The offer is objected to, first, because for any fraud perpetrated in the procurement of the charter by misrepresentation, or amount of insurance already applied for, it can be taken advantage of only by the commonwealth, and therefore the testimony showing or tending to show fraud in the procurement of the charter is irrelevant to the issue now trying.

Second. The assessment in this case is for the benefit of about 200 members who have sustained losses and who are equally innocent of the alleged fraud with the defendant, and even if the facts are as the offer proposes to prove, they would not constitute a defence to an action brought for the purpose of raising a fund to pay other members who have sustained losses and who are equally innocent with the defendant.

Third. The defendant became a member of the company as early as September 9, 1887, participated in the election of directors and officers of the company, and in the management of the affairs of the company through the said directors and officers who were his agents ; he cannot set up a fraud in which he acquiesced in order to defeat the rights of members who came in after him and who have sustained losses.

Fourth. The arrangement between the members of the company such as this is virtually one of copartnership and the frauds perpetrated by the agent of the institution cannot be taken advantage of by one of the members as against other members equally innocent of the fraud.

Fifth. The offer is generally irrelevant and incompetent.

Mr. Ruhl.—I will amend the offer by adding thereto the following: " And became a member of the company upon the representations contained in those circulars."

The Court.—I will admit anything that offers to prove that this defendant in procuring the policy in suit was induced by direct and fraudulent representations made to him by the company to become a member.   Exception. [1]

The court filed the following opinion :

### FINDINGS OF FACT.

" 1. The Berks County Mutual Live Stock Insurance Company was incorporated by letters patent issued November 10, 1886, as a corporation to make insurance upon the mutual principle on horses, colts' and mules against death or theft, under act May 1, 1876, P. L. 53.

" 2. By amendment, approved March 16, 1888, duly certified and recorded under act June 13, 1883, P. L. 122, the name of said corporation was changed to The Standard Mutual Live Stock Insurance Company of Reading, Pennsylvania.

" 3. (*a*) Upon his application dated September 9, 1887, George L. Kestner, the defendant, obtained from said company a certificate of membership therein, bearing the same date and to be in force for three years thereafter, numbered No. 2274, insuring a mare, property of the defendant, for the sum of $128 ; one of the conditions of which is that 'the holder of this certificate by accepting the same binds himself or heirs to pay the annual dues and assessments on this policy so long as the same may be in force ; not more than four assessments annually shall be made, which shall be the policy holder's pro rata share of the losses sustained by the company.'

" (*b*) Upon his application dated the same day, defendant obtained from said company a certificate, numbered No. 2275, dated the same day and to be in force for three years, of similar character and contents with the one described above, insuring a horse, property of the defendant, for $128.

" (*c*) Upon his application dated April 11, 1888, defendant obtained from said company a certificate numbered No. 4592, dated the same day and to be in force for three years, of similar character and contents, insuring a horse, property of defendant, for $180.

" (*d*) Upon his application dated January 7, 1889, defend-

ant obtained from said company a certificate numbered No. 7151, dated January 18, 1889, and to be in force for three years, of similar character and contents, insuring a horse, property of defendant, for $128.

" (*e*) Upon his application dated March 8, 1889, defendant obtained from said company a certificate numbered No. 7626, dated the same day and to be in force for three years, of similar character and contents, insuring a horse, property of defendant, for $152.

" 4. All the applications above mentioned were made by the defendant upon the faith of and in reliance upon the statements made in certain circulars from time to time issued by said company, or its general manager, with its approval, and by it or him placed in defendant's hands, holding out to the public the advantages of membership and insurance in said company, inviting the same, stating the names of persons to whom losses have been paid, the number of certificates or policies issued up to certain dates, the total amount of insurance written up to date, etc.

" 5. The circulars just mentioned were untrue and were known to the company and its authorized agents to be untrue, in this, that 998 certificates or policies claimed by them to have been issued, and representing $200,000 of insurance, to wit, in division 'A' certificates Nos. 1 to 500, and in division 'B' certificates Nos. 1 to 498, were never issued by said company, but were fraudulently entered and carried along on its books without payment of fees or assessments thereon, until shortly before the company ceased to do business, when by a vote of the board of directors they were ordered to be canceled for nonpayment of dues.

" 6. Large sums of money, viz., about $5,000, received by said company during the year 1888 as assessments were diverted by the order of the board of directors from the legitimate purpose of paying losses and proper expenses, and appropriated to the payment of increased salaries and back pay to officers, or have disappeared and remain unaccounted for upon the books of the company.

" 7. The defendant had no knowledge of the untruth of the statements made in circulars concerning the number of policies

issued and the aggregate of insurance written, nor of the illegal acts of the directors in the disposition of moneys collected by the company, until after the appointment of the receiver.

" 8. During the operation of the company something over two hundred losses were paid by it to members insured.

" 9. Among the losses paid was one for a horse insured by the company to the defendant under certificate No. 6148.

" 10. Upon bill in equity filed by one Aaron H. Wood against said company, to No. 480 equity docket, 1889, in the court of common pleas of Berks county, alleging inter alia the insolvency of said company, said court on 30th July, 1889, appointed Peter W. Fisher receiver of the same. On 6th October, 1891, said Fisher was on his own application discharged, and B. Frank Dettra, the plaintiff, appointed receiver of said company.

" 11. On 11th January, 1892, the said court in said proceedings ordered the said B. Frank Dettra, receiver as aforesaid, for the purpose of paying the losses incurred by said company and remaining unpaid and subsisting claims against it on July 30, 1889, to levy an assessment of 15 per cent upon all policies or certificates of membership in force at the time of the occurrence of the losses respectively.

" 12. The plaintiff thereupon levied an assessment pursuant to the terms of said order. (Note.—It was agreed by counsel for both parties upon the trial that the question of the reasonableness of the amount of the assessment should not be inquired into in this proceeding; this agreement to be without prejudice to the right of the defendant, notwithstanding any judgment in this suit, to apply for a reduction of the same in the equity proceedings or otherwise.)

" 13. The losses on certificates issued by the company, which occurred during the defendant's membership therein, by virtue of the certificates above referred to and while said certificates were in force, and which remained unpaid and subsisting claims against the company on 30th July, 1889, number 193, and amount in the aggregate to $26,074.46.

" 14. The amounts levied by the receiver as assessments under order 11th January, 1892, upon the certificates or policies held by the defendant are:

On certificate No. 2274    .    .    .    $27.06
"       "       "  2275  .    .    .    .    27.06
"       "       "  4592    .    .    .    32.33
"       "       "  7451  .    .    .    .    9.09
"       "       "  7626    .    .    .    7.69
                                      ————$103.23

" Upon the basis of these facts and as applicable to them, I make the following

"CONCLUSIONS OF LAW.

" 1. Under the terms of the policies or certificates held by the defendants, aside from any question of fraudulent practices by the company, or its agents, or officers, the defendant is liable for a proportionate amount of the losses occurring to other members of and insured in said company, and become claims against the latter before the date of its suspension and the appointment of a receiver and during a period when the said certificates were in force ; and for the purposes of this case, the assessment levied by the receiver upon the several policies or certificates held by defendant represented the proportionate amounts due by him. [2]

" 2. The fraud or misrepresentation practiced upon the defendant by means of the misstatements of the company and its agent in the circulars given to the defendants concerning the number of policies issued and the aggregate of insurance written, though it was the inducing circumstance that led defendant to apply for and accept the certificates held by him, and though he had no knowledge of the falsity of said statements until after the appointment of a receiver, cannot avail him as a defence in this suit.

" 3. The illegal and fraudulent acts of the board of directors in misapplying or wasting moneys collected by way of assessment to pay losses, and in failing to keep proper account thereof, though unknown to the defendant until after the appointment of the receiver, cannot be set up by him as a defence in this suit. [3]

" 4. The plaintiff in this suit is entitled to judgment against the defendant for the whole amount of his claim—$103.23." [4]

ENDLICH, J., filed the following opinion on exceptions :

" There are four exceptions by defendant upon this record. The first was taken at the trial to the ruling of the court upon

his offer to show fraud on the part of the corporators of the Insurance Company in obtaining their charter of incorporation. The others relate to the second, third and fourth conclusions of law as stated in the decision filed. The statutory allowance of thirty days is waived by counsel.

" 1. I take it to be a very clear proposition that one who has agreed to become a member of a corporation and has enjoyed the benefits and privileges of membership, cannot, when called upon to perform the obligations of his contract, set up as a defence that the corporation was not legally organized : 2 Morawetz, Priv. Corp., 743. The fraud that was offered to be shown was a fraud upon the commonwealth. But it is argued that it constitutes at the same time a fraud upon every person subsequently entering the corporation, because he has the right to assume that the statutory prerequisites in order to legal incorporation have been complied with; that he must be presumed to have entered upon the strength of that assumption, the falsity of which in itself is presumptively a fraud upon him, vitiating his contract of membership. That it can only. be presumptively a fraud upon him is clear from the fact that it may be rebutted by evidence of knowledge by the member of the true state of facts : Morrison, Receiver, v. Dorsey, 48 Md. 461. Apart from the objection that defendant's argument would thus require us to countenance a presumption of fact raised upon another mere presumption as its basis, which is not permissible, Douglass v. Mitchell, 35 Pa. 440–443 ; Phila. C. Pass. Ry. Co. v. Henrice, 92 Pa. 431–34, it appears subversive of the rule that the validity of a charter cannot be collaterally inquired into—a rule too well settled to require citation of authorities. There can be no substantial distinction between a collateral impeachment of the existence *de jure* of a corporation on the ground of fraud in the procurement of its charter, and the attempt to avoid the obligation of a contract made with the corporation on the ground of such fraud. If the one cannot be done, and of that there is no doubt, the other cannot be done. It is true that in Lycoming F. Ins. Co. v. Woodworth, 83 Pa. 223, a feigned issue to try the question of fraud in procuring the insured to enter into his contract, the company submitted the following points :

" ' A member of a mutual insurance company who has con-

tracted with it as a valid corporation is not in a position to object to the regularity of the incorporation or formation of the company.'

"The court below answered it as follows: 'This point we cannot affirm if you find there was fraud practiced upon them in procuring their assent to take the policy.'

"The verdict was for the insured and judgment was entered upon it. On writ of error, assigning inter alia the answer to the above point, the judgment was affirmed. In the opinion of Mr. Justice GORDON, it is said that certain of the assignments, including this one, raised the material question in the case. But there is no discussion of this particular assignment. Indeed, the material question was that of the applicability of the principle that the company, having profited by the fruits of its agent's acts, was bound by his representations. The answer to the point seems to mean and to have been accepted by the Supreme Court as meaning that, if there was fraud, the point, while abstractly correct, became immaterial. At any rate, I cannot regard that case as upsetting a rule of law recognized by innumerable decisions in this state and elsewhere.

"2. Concerning the fraudulent misrepresentations made to the defendant on the subject of the financial condition of the company as an inducement to acquire membership and insurance in it, it may be conceded that, as between the company and the insured, they would avail the latter as a defence in a suit by the former upon his contract: Sunbury F. Ins. Co. v. Humble, 100 Pa. 495; 1 Moraw., P. C., §§ 105–107. But it does not follow that they will do so in this suit. To be sure, Sunbury F. Ins. Co. v. Humble, supra, was an action by a receiver for an assessment levied by him. But the objection here made to the allowance of the defence was not there made, and its merits, of course, not passed upon; nor have I been referred to any decision exactly in point.

"Membership in a mutual company dates from consummation of the contract by which it is created: Eilenberger v. Ins. Co., 89 Pa. 464–469. Hence during the negotiation the relation of the applicant for membership to the mutual company is the same as that of one negotiating to become a member of a stock corporation to it: Ibid. There is, therefore, an analogy between the acquisition of membership in a mutual com-

pany and a subscription of shares in a stock company. Such a subscription is not only an undertaking to the company, but with all other subscribers: Graff v. R. R. Co., 31 Pa. 498; Miller v. R. R. Co., 87 Id. 95. It is a trilateral undertaking and even if fraudulent as between two of the parties, it is to be enforced for the benefit of the third: Graff v. R. R. R. Co., supra, p. 498. The third parties may be shareholders: Ibid.; Miller v. R. R. Co., supra; Minor v. Bank, 1 Pet. (U. S.) 66, per STORY, J.; or creditors: Turner v. Ins. Co., 65 Ga. 649; 38 Am. Rep. 801; Taylor on Private Corp., § 744, or both. The receiver is not the mere representative of the corporation, but the custodian of the interests of all the parties who may establish rights in the cause: Booth v. Clark, 17 How. (U. S.) 331, per WAYNE, J. As against him, therefore, no defence can be made which could not be made as against any of the interests which he represents. Hence, 'when the receiver of an insolvent corporation sues to recover the amount unpaid on a subscription, it is then too late to plead that the subscription was induced by fraudulent misrepresentation:' Taylor on Pri. Corp. § 523. That plea, as was said by Chelmsford, L. C., in Oakes v. Turquand, L. R. 2 H. L. 325, 344, would have availed in a case between the subscriber and the company, in which the latter had sued him for calls on his subscription; but, the contract being not void, but only voidable, that plea could not be set up as against the liquidator or receiver: Ibid., p. 352. The decision in this case does not, perhaps, as clearly as our own, recognize the trilateral character of the contract of membership. But it gives another reason, which is at least cumulative to it and leads to the same result. It is that, no matter if there was fraud in the statements made by the prospectus or circular upon the faith of which the relation of membership was assumed, the person who was thus misled into assuming it had, during the continuance of his membership, opportunity of investigating the affairs of the company of which he was bound to avail himself, and his voluntary ignorance upon the subject, until the company broke up, precluded him from then raising the objection: Ibid., p. 356. I prefer this reason to that based upon the analogy pointed out by Cairns, L. C., in Tennent v. Glasgow Bank, L. R. 4 Ap. Cas. 615, 621, between the liabilities in this respect of stockholders

and partners both fraudulently led into a joint enterprise, because this illustration can scarcely be extended . beyond the rights of creditors and is based upon the supposition of fraud on the part of one partner inducing the other to join him. But, as was said by Jessel, M. R., in re Hull and County Bank, Burgess' Case, L. R. 15 Ch. Div. 507, 512, so here the other members are as innocent of this fraud as the defendant. There is no pretence for saying that they authorized a committal of it; on the contrary, they themselves were defrauded in like manner; and, therefore, they acquired rights as innocent parties which would be defeated by a rescission of defendant's contracts. In other words, the voluntary ignorance of the defendant as to the true condition of the company's financial standing and his failure to withdraw in season constituted negligence on his part as against others becoming members and insuring after him; and all authorities agree that the right to avoid the contract of membership induced by fraud is barred by laches: 1 Moraw., P. C., § 108; Taylor, P. C., §§ 524–6; Garrett v. R. R. Co., 78 Pa. 465.

" There is probably no room for doubt that this company as regards its originators and managers was conceived in fraud and lived in fraud. But the persons, who, like the defendant, became members, insurers or creditors of it, are as innocent as he, and, so far as his undertaking with the company and his · acts and omissions while suffering himself to be held out as a member of it have clothed them with rights upon him and imposed on him duties and liabilities towards them, the fraud of the company upon him cannot avail him as a defence against their enforcement. And that is this case.

" 3. The exception to the third conclusion of law stated in the decision is, I think, disposed of by what was said by Mr. Justice WILLIAMS, in Koehler v. Beeber, 122 Pa. 291, 298:

" ' The defendant in the court below, when he took his policy and gave his premium note, became a member of the company. As such he had a right to attend the meetings of its members and to vote at the election of directors. If the directors were extravagant, incompetent, or careless of their trust, they were nevertheless his representatives in the management of the affairs of the company, and their acts done within the scope of their authority bind him. He should have investigated

the situation of the company and the character of the management before giving his note and subjecting himself to contribution towards the payment of salaries that bore no relation to the value of services actually rendered,' etc.

" Moreover, it is a general rule that illegal acts of a corporation are no defence to the enforcement of obligations incurred towards its members or others : Hoboken B. A. v. Martin, 2 Beas. (N. J.) 428 ; as, e. g., the misappropriation of corporate funds : REG. v. D'Eyncourt, 4 B. & S. 820, per COCKBURN, C. J.

" 4. If the second and third conclusions are right, as I think they are, the correctness of the fourth follows as a matter of course.

" And now, to wit, February 6, 1892, the exceptions filed are dismissed, and it 'is ordered that judgment be entered in favor of plaintiff and against 'defendant according to the decision previously filed."

Subsequently the court filed the following supplemental opinion :

" I desire to add to the opinion filed in this case on February 6, 1892, as pertinent to the first point discussed therein, the reference to a recent case which has come to my notice since that date.

" Stat. Mass. 1884, c. 330, § 3, provides that every foreign corporation doing business in that commonwealth shall file. with the commissioner of corporations a copy of its charter or certificate of incorporation, and a statement of the amount of its capital stock and of the amount paid in thereon to its treasurer, etc., which statement shall be subscribed and sworn to by its president, treasurer, and by a majority of its directors.

" A corporation chartered in Maine engaged in business in Massachusetts, after filing the statement required. Plaintiff took certain notes of the corporation after an examination of the statement and communicated to him of its contents by his attorney. The statement was in point of fact untrue, and plaintiff brought an action of deceit against its subscribers. It was held by the Supreme Judicial Court of Massachusetts that the action could not be sustained upon the ground of the untruth of the statement : Hunnewell v. Duxbury, 28 N. E. Rep. 267. In the opinion of the court, filed September 2, 1891, BARKER, J., citing a number of authorities, says:

" ' The main question is whether the plaintiff can maintain an action of deceit for alleged misstatements contained in the certificate. In the opinion of a majority of the court, this question should have been decided adversely to the plaintiff. The execution by the defendants of the certificate to enable the corporation to file it under St. 1884, c. 330, § 3, was too remóte from any design to influence the action of the plaintiff to make it the foundation of an action of deceit. To sustain such an action, misrepresentations must either have been made to the plaintiff individually, or as one of the public, or as one of a class to whom in fact they are addressed, or have been intended to influence his conduct in the particular of which he complains. This certificate was not communicated by the defendants or the corporation to the public or the plaintiff. It was filed with a state official for the definite purpose of complying with a requirement imposed as a condition precedent to the right of the corporation to act in Massachusetts. Its design was not to procure credit among merchants, but to secure the right to transact business in the state. . . . If such an action lies, it might have been brought in many instances upon representations made in returns required of domestic corporations, and yet there is no instance of such an action in our reports. . . . Nor is there any English case which goes to the length necessary to sustain the plaintiff's action. . . . In these cases the representations were clearly addressed to the plaintiffs, among others of the public or of a class, and were plainly intended and calculated to influence their action in the specific matter in which they claim to have been injured. So, too, in the American cases relied on to support the action. . . . In the case at bar the certificate was made and filed.for the definite purpose, not of influencing the public, but of obtaining from the state a specific right, which did not affect the validity of its contracts, but merely relieved its agents in Massachusetts of a penalty. It was not addressed to or intended for the public, and was known to the plaintiff only from the search of his attorney. It could not have been intended or designed by the defendants that the plaintiff should ascertain its contents and be induced by them to take the notes. It is not such a representation made by one to another with intent to deceive as will sustain the action. Its statements are in no fair sense addressed to the per-

son who searches for, discovers and acts upon them, and cannot fairly be inferred or found to have been made with the intent to deceive him.'

" It seems to me that the principle of this decision, whose application to this case lies upon the surface, sustains the ruling made at the trial on the defendant's offer, in respect of both what was excluded and what was admitted."

*Errors assigned* were (1) the ruling on evidence, quoting the bill of exceptions; (2–4) the conclusions of law found by the court.

*C. H. Ruhl,* of Ermentrout & Ruhl, and *Wm. R. Fisher* with him, for appellant.—This case is ruled by Sunburg Fire Co. v. Humble, 100 Pa. 495 ; New Era Life Ass'n v. Weigle, 128 Pa. 577.

*Cyrus G. Derr, Henry C. G. Reber* with him, for appellee, cited Graff v. R. R., 31 Pa. 498; Litchfield Bank v. Church, 29 Conn. 137.

PER CURIAM, March 21, 1892.

By agreement of parties, trial by jury was waived and the decision of this case was submitted to the court pursuant to provisions of the act of April 22, 1874.

It was claimed by defendant that he was induced to apply for and accept membership in the Standard Mutual Live Stock Company (of which plaintiff is receiver) by reason of false and fraudulent representations made to him by the officers of the company, as to its financial standing, amount of insurance, etc., and that he had no knowledge of the fraud thus practiced upon him until demand was made by the receiver for payment of the assessment in suit.

The facts constituting the alleged fraud were substantially found by the court; but it was also found that the rights of innocent third parties afterwards intervened, and for that reason the learned judge, in his second conclusion of law, held that the fraud practiced on the defendant could not avail him in this suit.

Where the rights of innocent third parties have not intervened the principle contended for by defendant is applicable. In such case, fraud justifies rescission of the vitiated contract, and as far as possible remits the parties to their former condi-

tion; but when, as in this case, the rights of innocent third parties have intervened, and it is essential to their protection that a contract, otherwise vitiated by fraud, and therefore voidable, should be sustained, equity requires that it be upheld. The application of that principle to the facts found by the court practically disposed of the case.

There was no error in the ruling complained of in the first specification, nor was there any error in either of the three conclusions of law recited in the remaining specification of error. Their correctness is fully vindicated in the opinion of the learned judge who presided at the trial. For reasons more fully given by him the judgment should be affirmed.

Judgment affirmed.