# Susquehanna Mutual Fire Ins. Co. v. A. A. Oberholtzer, Appellant.

| 172 | 223 |
| 172 | 233 |
| 172 | 223 |
| 183 | 573 |

| 172 | 223 |
| 207 | ⁵477 |
| 172 | 223 |
| 26 SC | ²272 |

*Insurance—Mutual fire insurance—Misrepresentations by agent—Avoidance of contract.*

Where an agent of a mutual fire insurance company falsely represents to an applicant for insurance that the policy gave the insured the privilege of withdrawing at any time on paying his proportion of the losses, and the applicant accepts the policy, and places it in his safe without reading it, and keeps it there for over a year, and in the meantime voluntarily pays two assessments, he cannot return the policy and demand its cancellation.

A member of a mutual fire insurance company cannot avoid his policy on the ground that he was induced to make the contract by fraudulent misrepresentations by the agent of the company, where he has made no objection for over a year, has paid assessments, and in the meantime a large number of other persons have taken out policies.

While his right to avoid the policy, if exercised within a reasonable time, is clear, he cannot, as to subsequent members, openly assume all the privileges and obligations of membership for more than a year, and then deny his liability to contribute, along with those who may have been induced to become members on the faith of his membership. Per DEAN, J.

*Insurance—By-laws—Policy—Application.*

Trivial and immaterial variations between the by-laws, as printed on the policies, and those adopted by the company are not sufficient ground for excluding the policy as evidence in an action by a mutual insurance company to recover assessments.

*Insurance—Failure to print by-laws upon the policy—Act of May 11, 1881.*

Where a by-law adopted by a mutual insurance company, but omitted among the by-laws as printed upon the policy, restricts the right of assessment to a certain exact method specified in such by-law, and an assess-

ment is made by the company in accordance with the method prescribed by the by-law, the omission of the by-law in the policy is fatal to the company's right to recover the assessment.

Argued March 12, 1895. Appeals, Nos. 76 and 77, July T., 1894, by defendant, from judgments of C. P. Northampton Co., Oct. T., 1885, No. 59, and June T., 1891, No. 47, on verdicts for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Two appeals from judgments of a justice of the peace tried together in the court of common pleas. Before REEDER, J.

The facts are fully stated in the opinion of the Supreme Court.

At the trial the plaintiff offered the policy and application in evidence.

Defendant objected to the policy and application being received in evidence, because said policy purported to contain a correct copy of the by-laws, when in point of fact it was not a correct copy, but stated a different mode of assessment than that which the by-laws provided.

The policy contained the two following by-laws:

"First. All members whose policies are in force at the time the assessment may be declared shall be liable to assessment for all losses adjusted, unadjusted and unpaid, and all other liabilities then existing against the company, subject to abatement as hereinafter specified. Second. All members whose policies have expired and are not in force at the time such assessment is declared shall, nevertheless, be liable to assessment for all unpaid losses and other liabilities which existed at the time of the expiration of such policy or policies pro rata with those then in force."

Q. It was shown that there was a by-law, not in the policy, as follows?—"And the amount thus ascertained and levied upon such expired policies to be deducted from the gross amount of liabilities of the company for which assessment is to be made, and balance of liabilities then remaining to be assessed upon the policies then in force."

The court overruled the objections, admitted the policy and application in evidence, and sealed a bill for defendant.

By Mr. Emmens: " Our motion is that we object to the by-

laws being received in evidence, and move to strike out all the testimony relating to the by-laws of this company, because they are not correct copies of the by-laws in the policy, and, therefore, they are not admissible in evidence under the act of May 11, 1881."

By the Court: "The motion is denied. The plaintiff company can only take advantage of the part of the contract and can only be benefited by those portions of the by-laws that are printed as part of the contract. The defendant, of course, is at liberty to take advantage and defend upon any portion of the by-laws as adopted by the company, as the plaintiff would be estopped to take advantage of any portions of the by-laws not printed in the policy; but those portions of the by-laws as printed by them upon the policy they would have the right to take advantage of as part of the contract, provided they are correctly printed, so far as they are printed. The mere omission to print a part of the by-laws would not vitiate the contract, but the contract, so far as the company is concerned, must stand as entered into by them and as printed by them as part of their policy. We will give the defendant an exception." [2]

The court charged in part as follows:

"[It appears from the printed by-law attached to the policy that a certain portion of the actual by-law is omitted, and that, therefore, the contention of the defendant in that respect is true. The by-law is not printed exactly as it appears to have been passed by the board of directors, but the latter part of the clause has been omitted in the printed copy attached to this instrument. Whatever is printed is part of the contract; whatever is omitted the company cannot take advantage of. The defendant can. That is, the plaintiff corporation is estopped from setting up its omission to comply with the law in order to protect itself, but the omission of any portion of these by-laws would not prejudice the defendant's rights, but he would have the right to take advantage of such omission proving it.] " [12]

The court directed a verdict for the plaintiff. [13]

Verdicts and judgments for plaintiff for $253.32 and $228.91. Defendant appealed.

*Errors assigned* among others were, (2) rulings on evidence.

quoting the bill of exceptions; (12, 13) above instructions, quoting them.

*T. F. Emmens, G. W. Mackey* and *H. A. Mackey* with him, for appellant.—Even though there is no doubt of the genuineness of the application, failure to attach it to the policy estops the company from putting it in evidence and " it has no force whatever : " Hebb v. Ins. Co., 27 W. N. C. 97 ; Ins. Co. v. Dunham, 3 Atlan. 579 ; act of May 11,1881, P. L. 20 ; New Era Life Ins. Co. v. Musser, 120 Pa. 384.

Under the old law the person insured in a mutual insurance company was affected, as a member, with notice of its rules and regulations (Mitchell v. Lycoming Ins. Co., 52 Pa. 402), even though he had no copy of the rules and regulations and in point of fact had never seen them.

Defendant had a right to rescind the contract on account of the fraud practiced upon him : Mitchell v. Ins. Co., 51 Pa. 402 ; Mundorff v. Wickersham, 63 Pa. 87 ; Pollock on Contracts, 526 ; Ins. Co. v. Wilkinson, 13 Wall. 222 ; Johnson v. Jones, 4 Barb. 369 ; Woodbury Savings Bank v. Charter Oak Ins. Co., 1 Conn. 518 ; Walker v. France, 112 Pa. 203 ; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35.

*William C. Shipman,* for appellee.—To print all the by-laws and rules of a company would not be a benefit to the insured, but, on the contrary, would be an incumbrance and obstruction to the purpose of the act. It would serve no purpose but confusion to burden the insured with regulations that would have no material relation to his interests.

Declarations of the agent are inadmissible to vary the instruments in suit : Knight v. Ins. Co., 9 W. N. C. 501 ; Thorne v. Warfflein, 100 Pa. 519 ; Ins. Co. v. Fromm, 100 Pa. 347 ; Buckley v. Columbia Ins. Co., 83 Pa. 298.

The omission of the by-law neither injured nor benefited the defendant. The omitted clause provided that in case the assessment on all policies, expired and unexpired, but in existence at the time of loss, should be insufficient to pay all losses, the balance should be levied upon policies issued after the loss. The entire by-law with the omitted part was before this court in Sus. M. Fire Ins. Co. v. Stauffer, 125 Pa. 416, upon this iden-

tical assessment No. 11.    It was held that the clause omitted in these policies was not needed to sustain the assessment, as the policies in force at the time of loss, " furnishing sufficient fund, there was no necessity to resort under the first clause of the by-law to the policies issued after loss."

### APPEAL No. 76, JULY T., 1894.

OPINION BY MR. JUSTICE DEAN, October 7, 1895 :

The defendant was the owner of a hotel in Bangor borough, Northampton county.    On the 26th of May, 1882, Hunsicker, agent of plaintiff, solicited him to take out two policies for fire insurance in his company; the weight of the evidence shows the agent misrepresented to him the terms of the written application then signed; Oberholtzer wanted a stipulation inserted that he should have the privilege of withdrawing at any time on paying his proportion of the losses, and that this should be inserted in the policies when issued; Hunsicker assured him such condition was in the application, and would also appear in the policies when issued; thereupon, Oberholtzer signed the application, without reading it; it contained no such provision, nor did the policies embody it.    Oberholtzer, soon after, received the policies, and without reading them put them in his safe, where they remained more than a year, without objection from him; in the meantime he voluntarily paid two assessments upon them; he then transferred possession of the hotel, but not of the property covered by the policies, to one Seiple, returned the policies to the company, and requested that they be canceled; in the meantime between five and six hundred later policies were issued; the company declined to grant his request to cancel.    Afterwards, on October 4, 1884, the company made an assessment, No. 11, of 8½ per cent, and then another, June 6, 1885, of 14¾ per cent, and these were followed in quick succession by Nos. 13, 14 and 15, the aggregate of the different amounts called for on the two policies being $324.88, and this sum, with interest, was the amount of the company's claim on both policies.    Oberholtzer refused to pay, and two suits were instituted against him before justices of the peace, and from their judgments appeals were taken to the common pleas, in which they were tried together, April 18, 1894. Under the rulings of the court and instructions to the jury, the

verdict and judgment were for plaintiff for full amount of claim, and defendant now appeals, assigning thirteen errors. No inconsiderable part of appellant's argument is taken up in demonstrating trivial variations between the by-laws as printed on the policies and those adopted by the company; all of these errors are such as usually creep into a printed copy from the manuscript or copy furnished the printer, and which no care in proof reading seems to cure; none of them are material, or have a tendency to mislead the insured; for example, in the policy it reads the assessment shall be "subject to abatement hereinafter specified," while the office copy says, "as hereinafter specified;" the omission of the word "as" on the policy is the variation. Again, in the classification of policies subject to assessments, it is declared in the by-laws that expired policies shall "be liable to assessment for all unpaid losses" at date of expiration; in the copy on the policy, the word "all" is left out, probably by the compositor, so that it reads, "shall be liable to assessment for unpaid losses;" these are but illustrations of a number of like errors. While the act of 1881 says the policy "shall contain or have attached to said policy, correct copies of the application as signed by the applicant, and the by-laws," such departures from correctness, as are here shown, are not fatal to a claim by the insurer; absolute correctness, with our present senses, is not attainable in this life in things material, though, according to the creed of some, it is, in things spiritual; but we are now dealing with ordinary business affairs, and correctness in them means such identity of the printed instrument with the by-laws as can be reasonably had from the work of an insurance office clerk and a printing office compositor; as long as the error is not such as would probably mislead the insured, the policy copy is a substantial compliance with the act of assembly, although it may not be a literally correct copy.

As to the false representations made by the agent of the company to obtain an application for the policies, undoubtedly these were sufficient to avoid the policy, if the insured chose to treat it as avoided at the proper time. When was the time which equity would regard as proper for the exercise of this right? Certainly within a reasonable time after discovery, or opportunity for discovery, of the fraud; the policies were de-

livered to Oberholtzer soon after the 26th of May, 1882 ; they were the evidence of his contract ; he must then accept or refuse it ; without looking at it, he put it in his safe, where it remained more than a year unopened ; in the meantime he pays two assessments without objection ; then examines his policies, and finds they express a different contract than that agreed upon between him and the agent ; thereupon he returns them, and demands cancellation. This was too late when examination a year before would have shown the fraud, and it must be presumed he did what it was his duty to do then, examine them ; his subsequent silence and payment of assessments is acquiescence.

But there is another objection which is fatal to defendant's claim to avoid his contract. He permitted his membership to remain undisturbed in a mutual company for more than a year, during which time he recognized his obligations as a member by paying, without even a protest, two assessments ; during that time over five hundred new members took out policies ; they were innocent of any fraud upon Oberholtzer, and it must be assumed they became members in view of the fact that he and other property holders then on the books of the company, in proportion to the amount of their insurance, would share with them the burdens of assessment for losses. The officers of a mutual company represent all its members, and have a right to insist on the equities of any of them as against any one of them. Therefore as to these innocent third parties whose rights intervened, the company could successfully urge that Oberholtzer had waived any claim to have the contract declared void because of the fraud which induced it. While his right to avoid the policy, if exercised within a reasonable time, is clear, he cannot, as to subsequent members, openly assume all the privileges and obligations of membership for more than a year, and then deny his liability to contribute along with those who may have been induced to become members on the faith of his membership : Dettra v. Kestner, 147 Pa. 566. While this citation is that of a bankrupt company, the rule and reason for it are equally applicable to the facts in the case before us.

Another error alleged is that a full copy of the by-laws relating to assessments was not attached to the contract or policy

offered in evidence. As the suit was for five separate assessments, the act of assembly absolutely required that any part of the by-laws affecting defendant's obligation to pay must accompany the contract. The language of the act is: " All life and fire insurance policies which contain any reference to the application of the insured, or the constitution, by-laws or other rules of the company, either as forming part of the policy or contract between the parties thereto, or having any bearing on said contract, shall contain or have attached to said policy, correct copies of the application, as signed by the applicant, and the by-laws referred to, and unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence in any controversy between the parties to or interested in said policy. Nor shall such application or by-laws be considered as part of the policy or contract between such parties."

We said of this act in New Era Life Insurance Co. v. Musser, 120 Pa. 384: " It is a wise and beneficial act founded upon sound reasons of public policy; it affords protection to persons who insure their lives or property and can injure no company conducted on honest business principles."

The by-law concerning assessments as printed on the policy is as follows : " All members whose policies are in force at the time the assessment may be declared shall be liable to assessment for all losses adjusted, unadjusted and unpaid and all other liabilities then existing against the company subject to abatement as hereinafter specified. Second, all members whose policies have expired and are not in force at the time such assessment is declared shall nevertheless be liable to assessment for all unpaid losses and other liabilities which existed at the time of the expiration of such policy or policies pro rata, with those then in force."

But, from the plaintiff's own testimony, there was another part of the assessment by-law which was not printed, as follows : " And the amount thus ascertained and levied upon such expired policies shall be deducted from the gross amount of liabilities of the company for which such assessment is to be made and balance of liabilities then remaining to be assessed upon the policies then in force."

To determine whether this by-law formed part of the policy

or contract or had any bearing thereon as is the language of the act, resort must be had to the policy and the dates of assessments; the policy was for the term of five years from the 26th of May, 1882; from its face it was in force until the 26th of May, 1887. Assessment No. 11 was laid October 4, 1884; assessment No. 12, June 6, 1885; assessment No. 13, May 1, 1886; No. 14, June 4, 1887; No. 15, May 12, 1888. Hence, two of these assessments were laid after the policy had expired by its own limitation of five years; but defendant averred a surrender of the policies 26th of February, 1884, by returning them to the company and demanding their cancellation, and he offered testimony tending to show a surrender; whether in view of the circumstances the law would hold there was a valid surrender had not, at that stage of the trial, been decided; but of his intention to surrender, and doing what could be done at that late day to effect it there was no serious dispute. If he had in law perfected a surrender on February 26, 1884, all of the five assessments were laid after his policies were no longer in force. By the terms of his contract and the printed by-law upon it, apparently if the surrender had been made as averred by him he was liable to assessment for losses occurring only before the 24th of February, 1884; here then were assessments laid running from six months to five years after that date; and even if it ran the full five years two of them were levied when the policy was not in force. There were then two distinct grounds of assessment: 1. Policies in force at the time of assessment are liable for adjusted, unadjusted and unpaid losses up to the date of assessment, subject however to abatement as hereinafter specified. 2. Expired policies are liable to assessment for all unpaid losses existing at the date of expiration pro rata with policies in force. But this only provides for a pro rata of expired policies with those in force as to losses up to the date of the expiration; there are other losses to be provided for,—those between the date of the expired policies and the date the assessment is laid; provision is made for this in the by-law attached to the policy. 3. The amount heretofore levied on policies in force and those expired, to cover losses up to the date policies expired shall be deducted from the gross amount of liabilities up to the date of assessment, and the difference or remainder shall be levied on policies in force.

Can it be said that this omitted by-law was not part of this contract, and could have had no bearing thereon, in view of the dates of these different assessments, with reference to the time his policy was in force, and in view of the contract itself, which declares it is made subject to the by-laws? Suit is brought against him for five assessments; as to the facts determining his liability, he must judge for himself as to their existence; but as to the law of the contract which also determines his liability, he must look to his policy, and he has a right to rest on the assumption that, when the statute declares a by-law bearing on his contract and forming part of it shall be printed, it will appear in the policy. He has been called upon to answer for alleged indebtedness on a contract in his possession; possibly, he desires to make affidavit of defense to the whole or part of the claim, to tender the whole or part of the money demanded, or to tender judgment; certainly at that juncture he has a right to ascertain his legal liability from the written contract in his possession; he cannot do so here, for the company has not disclosed by its by-law the basis on which it can make assessments on him. It is argued, the omitted by-law did not restrict the company's right to recover; we answer, it restricted the right of assessment to the exact method adopted in the by-law; under that method, when known to defendant, he determined from the facts, the dates of the losses and the date of the expiration of his policies, his liability; the extent of the right to assess could only be determined from the whole by-law on that subject.

The case of Frederici v. Penna. Mutual Fire Ins. Co., 1 Monaghan, 493, does not decide this question. That was a suit upon a promissory note, not a premium note, given for an assessment; the court below held that it did not follow, because the application was not attached to the policy, an assessment could not be recovered, much less could it be argued that a suit could not be maintained upon a promissory note for an assessment. The judgment was affirmed per curiam.

From this affirmance it does not follow that all the reasons given by the court below were approved; one of them, that the suit was on a promissory note for assessments and not on the contract, was sufficient to warrant the judgment, and it was affirmed. In neither of the other cases cited, Insurance Co. v.

Stauffer, 125 Pa. 416, and Thropp v. Insurance Co., 125 Pa. 427, is the question now raised passed upon by this court. The opinion in each case is by Justice MITCHELL; in the first, the by-law relating to the assessment was attached to the policy, and he gives that construction to it which its language imports. In the second case, he interprets the contract as disclosed by the policy. They do not touch the question before us.

As we said in Hebb v. Insurance Co., 27 W. N. C. 97 : " The act of 1881 was intended to produce a uniform rule of procedure, and apply to all insurance companies, incorporated by the laws of the state. Laxity in enforcement of the law would be productive of litigation, and tend to great confusion in practice."

There is no reason why this company should not have printed the whole of the by-laws providing the basis and method of assessment; instead, they drop one third, and print but two thirds, then produce the policy and by-laws in evidence. The penalty provided should have been enforced, and the jury have been instructed that plaintiff had proven no contract which entitled it to recover.

The judgment is reversed.

### APPEAL NO. 77, JULY T., 1894.

OPINION BY MR. JUSTICE DEAN, October 7, 1895 :

The questions raised in this case are the same as those in No. 59 October term, 1895, of the court of common pleas of Northampton county, opinion herewith filed. For the reasons given in that case, the judgment here is reversed.

January 6, 1896, reargument refused in above cases.