# Sparks *v.* Flaccus Glass Company.

*Practice, C. P.—Pleading—Statement of claim—Cause of action.*

In an action to recover the amount of an assessment made by the board of directors of a mutual fire insurance company, where the action is upon the contract named in the policy, of which the by-laws form a part, and not upon the resolution of the directors, a statement of claim which has the policy and by-laws attached to it, and which clearly and concisely avers that the losses and expenses of the plaintiff company during the time the defendant's policy was in force necessitated the assessment, that it was duly made by the board of directors on a day named, and that due notice thereof was given the defendant, is a sufficient statement of a good cause of action without attaching a verbatim copy of the resolution, and a detailed and itemized statement of the losses and expenses which necessitated the assessment.

*Practice—Pleading—Affidavit of defense—Demurrer.*

A suggestion contained in an affidavit of defense that the statement of claim is not sufficient in law to entitle the plaintiff to judgment is in the nature of a demurrer, and is not equivalent to a motion for a bill of particulars. Such demurrer raises a pure question of law, whilst the latter motion is addressed to the discretion of the court.

*Insurance—Mutual fire insurance—Withdrawal—By-laws.*

Where a by-law of a mutual fire insurance company permits a member to withdraw at any time provided the policy is returned for cancelation, "and if all charges standing against said policy holder shall have been paid," and another article provides that members whose policies have been canceled "shall be liable to assessments for losses and expenses incurred during the time the policy was in force," the company does not, by permitting a member to withdraw, relieve such member from liability for losses incurred during the life of his policy, but which were not charged against him prior to his withdrawal.

*Insurance—Mutual fire insurance—Affidavit of defense—Fraud, Accident and mistake.*

In an action to recover the amount of an assessment of a mutual fire insurance company an affidavit of defense is insufficient which avers that through fraud, accident or mistake practiced by plaintiff, the policy in suit was issued to him instead of a nonassessable policy which the plaintiff had promised and agreed to issue to him, without any averment that at the very time the policy was issued and accepted by the defendant any officer or authorized agent of the company represented or agreed that it was a nonassessable or a limited assessable policy.

A person who accepts an assessable policy of insurance will not be permitted afterwards to aver that the insurance company had promised to give him a nonassessable policy and through fraud, accident or mistake such policy was not issued to him, where it appears that a mere glance at

the face of the policy which he received would have been sufficient to give him the knowledge he needed, that he had the benefit of the insurance for three months and a half and was permitted to return the policy for cancelation, thereby accepting the benefit of the right to be discharged from the payment of the balance of the premium, and that in the mean time the rights of other policy holders had attached, who had no knowledge or notice that the policy in question did not express the full agreement of the parties.

*Contract—Fraud, accident or mistake—Rescission of contract—Innocent third parties.*

A man cannot ask to be relieved from his written contract upon the ground of mutual mistake, or of fraud practiced upon him in the execution or acceptance of the purchase, without specifically alleging facts from which the mistake or fraud may be clearly and indubitably inferred.  A fortiori is this true, when he has failed to exercise the most common prudence, has accepted and enjoyed the full benefits of the contract, and the rights of innocent third persons will be prejudicially affected.

Argued Oct. 18, 1900.  Appeal, No. 24, Oct. T., 1900, by defendant, from order of C. P. No. 1, Phila. Co., Sept. T., 1899, No. 585, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Alfred A. Sparks, Receiver of The Fidelity Mutual Fire Insurance Company, v. C. L. Flaccus Glass Company.  Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.  Affirmed.

Assumpsit to recover the amount of an assessment of a mutual fire insurance company.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that suit was brought for three annual assessments on an assessable policy of fire insurance. On the face of the policy these words were stamped, "Limited assessment policy.  In consideration of the assured hereby waiving all right to participate in the profits or return dividends of this company, the liability to assessment on this policy is limited to one dollar.  Signed : Alfred A. Sparks."

The affidavit of defense was as follows :

Deponent is advised, believes, and suggests to the court that the statement filed in the above case is not sufficient in law to entitle the plaintiff to judgment, for the following reasons :

1. That the said statement does not set forth a copy of the resolution, motion or action of the board of directors, asking the assessment referred to in said statement.

2. That said statement does not set forth the losses and expenses of the plaintiff company during the time defendant's policy was in force, which necessitated an assessment in the sum of three annual premiums amounting to $131.25, as is averred in said statement.

That the original policy, upon a renewal of which this suit is brought, was a " limit.d assessment policy," containing the following stipulation : " In consideration of the assured hereby waiving all right to participate in the profits or return dividends of this company, the liability to assessment on this policy is limited to one dollar," signed by the then secretary but present receiver of the plaintiff company.

That this deponent on January 12, 1898, withdrew from membership in the plaintiff company, and that the plaintiff company knew on that date of the financial condition as to losses and expenses; nevertheless despite this knowledge the plaintiff company did on that date cancel the policy of the deponent in accordance with by-law fifteen, which provides that policies will not be canceled unless all charges standing on the books of the company against the policy holder shall have been paid.

This deponent further says that an agent of the plaintiff company solicited of the defendant the placing of fire insurance upon defendant's property located in the borough of Tarentum, and Harrison township, Allegheny county, Pennsylvania, but it was expressly stated by defendant to said plaintiff's agent that he would not place or accept any fire insurance in any assessment company or companies where the stockholders could be assessed for losses upon their policies.

That the plaintiff's agent agreed with this deponent that the policy issued to him should be a regular nonassessable fire insurance policy, and charged deponent with a full regular nonassessable rate, such as then was and now is charged by the fire insurance underwriters' association.

That this deponent was charged for his policy by the plaintiff's agent the sum of money named in the copy of the policy attached to the statement of claim filed, which sum was the same amount of money which deponent would have been obliged to pay—no more and no less—had the insurance been effected with an insurance company upon a stock plan.

That the policy delivered to the defendant was the standard full stock policy in use by the stock companies, with the exception of the words "Mutual" and "In consideration of the stipulations herein named and of Forty-three and $\frac{75}{100}$ dollars premium," etc., ending with "annual premium paid," which stipulation is waived by a clause imprinted upon the face of the original policy as follows: "Limited assessment policy. In consideration of the assured hereby waiving all right to participate in the profits or return dividends of this company, the liability to assessment on this policy is limited to one dollar;" the same being signed by the company's then secretary and present receiver.

Deponent further says that if the actual policy upon which this suit is brought, does not contain the stipulation entitled "limited assessment policy" above mentioned, it is because of a fraud, accident or mistake on the part of the plaintiff company, and was neither known to deponent at any time, nor would the omission have been permitted, or a renewal policy accepted by defendant if it were exactly as is averred by the plaintiff in the alleged copy attached to the statement filed.

That the placing of said insurance by the plaintiff upon the mutual assessment plan was a fraud, accident or mistake practiced by said plaintiff company upon the defendant, because as deponent is informed, believes and expects to be able to prove, the plaintiff promised and agreed to issue said renewal policy as a "nonassessable policy" and have the word "nonassessable" stamped on the face of the policy, which fraud, accident or mistake practiced upon defendant by plaintiff was not discovered by the deponent at the time said policy was accepted by deponent, and that the plaintiff had not complied with its promise and agreement to issue a nonassessable renewal policy to deponent, and have the same stamped in a manner precisely similar to the original policy which contained the nonassessable clause.

That the defendant is not indebted to the plaintiff as will appear by a reference to article 14, section 1 of the by-laws of the plaintiff's company, which is as follows: "Or unless the liability to assessment is limited to a fixed sum, then the assessment shall in no case exceed the amount so limited."

The court made absolute a rule for judgment for want of a sufficient affidavit of defense.

119, (1901).] Assignment of Errors—Opinion of the Court.

*Error assigned* was the order of the court.

*Evan B. Lewis* and *Henry C. Remick*, for appellant.—To permit the appellee to proceed upon its simple ex parte statement that the assessment was necessary, is to permit these iniquitous institutions more freedom and scope than is usually granted to the most upright individual or body corporate. Neither the court nor the appellant are given any opportunity to judge of the necessity of the assessment, nor to prepare to combat the same at the trial, unless the same be set out in the statement of claim. It is in the nature of a demand for a bill of particulars, and common justice would seem to make it necessary to have it set out in full: Lycoming Insurance Co. v. Bixby, 15 W. N. C. 109; Jones v. Sisson, 6 Gray, 288; Traders' Mut. Fire Insurance Co. v. Stone, 9 Allen, 483; Fidelity Mut. Fire Insurance Co. v. Industrial Brick Co., 12 Pa. Superior Ct. 404.

*C. F. Eggleston*, with him *W. W. Weigley*, for appellee.—It is submitted that Fidelity Mut. Fire Insurance Co. v. Industrial Brick Co., 12 Pa. Superior Ct. 404, does not rule the case at bar for two reasons: First, the defendant's allegations in that case were far more specific and precise than in the present case, and therefore the affidavits are not on a par. In the second place, we submit that Insurance Co. v. Brick Co. is contrary to the decision of the Supreme Court of Pennsylvania, and should not be followed by this court: Susquehanna Mut. Fire Ins. Co. v. Oberholtzer, 172 Pa. 223; Lewis v. Dunlap, 5 Pa. Superior Ct. 625.

Even if the alleged clause limiting the assessment to $1.00 had been inserted in the policy, this would not prevent the recovery by a receiver for assessments duly made to pay losses: Dettra v. Simon, 5 Pa. Dist. Rep. 342; Kramer v. Boggs, 5 Pa. Superior Ct. 401.

The surrender and cancelation of the defendant's policy cannot be set up as a defense to this action: Susquehanna Mut. Fire Ins. Co. v. Mardorf, 152 Pa. 22.

OPINION BY RICE, P. J., January 22, 1901:

This was an action to recover the amount of an assessment made by the board of directors of a mutual fire insurance com-

pany. The action was upon the contract contained in the policy, of which the by-laws formed a part, not upon the resolution. Copies of the instruments, namely, the policy and the by-laws upon which the action was founded were attached to the statement, and the facts are clearly and concisely averred therein that the losses and expenses of the plaintiff company during the time the defendant's policy was in force necessitated the assessment, that it was duly made by the board of directors on a day named, and that due notice thereof was given the defendant. This was a sufficient statement of a good cause of action, without attaching a verbatim copy of the resolution and a detailed and itemized statement of the losses and expenses which necessitated the assessment : Fidelity Mut. Fire Ins. v. Industrial Brick Co., 12 Pa. Superior Ct. 404 ; Fidelity Mut. Fire Ins. Co. v. Hancock, 9 Pa. Superior Ct. 480 ; Fidelity Mut. Fire Ins. Co. v. Vitale, 10 Pa. Superior Ct. 157. The suggestion contained in the affidavit of defense that the statement was not sufficient in law to entitle the plaintiff to judgment was in the nature of a demurrer, and was not equivalent to a motion for a bill of particulars. Such demurrer raises a pure question of law, whilst the latter motion is addressed to the discretion of the court. Treating the suggestion as a demurrer, the court committed no error in overruling it.

It was stipulated in the policy that, " by accepting this policy, the assured hereby agrees to pay to said insurance company such further sums " (in addition to the cash premium) " and at such times as the board of directors shall assess and order pursuant to the charter, the by-laws and laws of this state, providing such assessment shall not exceed three times the annual premium paid. Article 13 of the by-laws provides that each member shall pay into the treasury of the company such assessments as may be levied, " and charged to their account on the books of the company," within thirty days from the date thereof. Article 15 provides that a member may withdraw from the company at any time before the expiration of his policy, provided the policy is returned to the company for cancelation, " and if all charges standing against said policy holder shall have been paid." Article 16 provides that members whose policies have been canceled or expired " shall be liable to assessment for losses and expenses incurred during the time the policy was in

force," subject to the limitation expressed in article 14, namely, that "such assessments shall not exceed the amount of three annual premiums on any one policy." At the time the defendant withdrew from the company and surrendered his policy for cancelation, this assessment had not been levied and charged against the defendant on the books of the company. It was not one of the "charges" referred to in article 15 which must be paid as a condition precedent to withdrawal. To hold that because the company permitted the defendant to withdraw—a thing it could not prevent—the company is estopped to deny that the defendant was thereby discharged from all liability for losses incurred during the life of the policy would nullify article 16. The proposition is so clearly erroneous that it will not bear discussion.

There is much irrelevant matter in the affidavit of defense. The substance of the defense is contained in the following paragraph:

"That the placing of said insurance by the plaintiff upon the mutual assessment plan, was a fraud, accident or mistake practiced by said plaintiff company upon the defendant, because as deponent is informed, believes, and expects to be able to prove, the plaintiff promised and agreed to issue said renewal policy as a "nonassessable policy" and have the word "nonassessable" stamped on the face of the policy, which fraud, accident or mistake practiced upon defendant by plaintiff was not discovered by the deponent at the time said policy was accepted by deponent, and that the plaintiff had not complied with its promise and agreement to issue a nonassessable renewal policy to deponent and have the same stamped in a manner precisely similar to the original policy which contained the nonassessable clause."

We remark with regard to these averments, that if the defendant did not discover that the word "nonassessable" was not stamped on the face of his policy, it was because he did not look at it. It was not necessary for him to read conditions in fine print to learn that it was not the same kind of a policy he had had the year before. A mere glance at the face of the policy would have been sufficient to give him the knowledge he needed. Under all the circumstances of this case, this was a duty. For, it is to be noticed, that there is no allegation that anything was said or done at the time he accepted the policy, which can, by

any ingenuity, be twisted into a misrepresentation of the contents of the instrument, or which put him off his guard and induced him not to look at the face of the policy. The averment as to a prior promise or agreement is indefinite as to time, and as to the officer or agent of the company that made it. If, as there is strong reason for surmising, the agreement, pursuant to which the policy for the preceding year was issued, is the one referred to, it was clearly irrelevant. Still more clearly irrelevant was the defendant's inference, if that is what he means, that the original agreement under which the insurance was placed on his property became, ex proprio vigore, the agreement that was to control in the issuing of any subsequent policy. If that was not the defendant's purpose in introducing the averments as to the agreement under which the first policy was issued, we fail to see their relevancy, and even for that purpose they were irrelevant. But without indulging in further speculation as to the possible meaning of the defendant's averment relative to the renewal, this much is clear, that he does not aver, that, at the very time the policy was issued and accepted by the defendant, any officer or authorized agent of the company represented or agreed that it was a nonassessable or a limited assessment policy. The policy was issued on September 28, 1897. After having had the benefit of the insurance for three months and a half upon the clear and unambiguous terms specified in the contract, which he had in his possession all the time, the defendant returned the policy for cancelation and paid the earned portion of the cash premium. He thus accepted a second benefit secured to him by the policy, namely, the right to be discharged from payment of the balance of the premium. In the mean time the rights of other policy holders had attached. It is not pretended that they had any knowledge or notice that the policy issued to the defendant did not express the true agreement of the parties.

It must be conceded that in many respects the case resembles Ins. Co. v. Brick Co., supra, but the cases are not parallel in all their controlling facts. In principle the case is more nearly like Susquehanna Mutual Fire Ins. Co. v. Oberholtzer, 172 Pa. 223. Written contracts are presumed to express the real agreements of the parties, and are not to be lightly set aside on vague allegations and uncertain inferences of fraud. A man cannot ask

to be relieved from his written contract upon the ground of mutual mistake, or of fraud practiced upon him in the execution or acceptance of the paper, without specifically alleging facts from which the mistake or fraud may be clearly and indubitably inferred. A fortiori is this true, where he has failed to exercise the most common prudence, has accepted and enjoyed the full benefits of the contract, and the rights of innocent third persons will be prejudicially affected, as is the case here.

Judgment affirmed.