## Schofield v. Hayes.

*Insurance—Live stock insurance—Mutual companies—Assessments.*

Where a person in applying for and accepting membership in a mutual live stock insurance company consents to be bound, so far as rates, premiums and payments are concerned, by the terms and provisions of the constitution and by-laws of the society, and the constitution and by-laws provided in express terms that losses shall be paid by assessments, and that any person applying for membership must agree to pay all assessments made by the board of directors for losses and expenses, the member cannot be heard to say that he is not liable for assessments. Given v. Rettew, 162 Pa. 638, distinguished.

*Insurance — Live stock insurance—Agent—Parol statements as to premiums.*

Where an application for a policy in a mutual insurance company pro-

vides that the policy to be issued thereon shall be based entirely upon the statements and declarations in the application and not upon any statements of solicitors, a policy holder cannot after the expiration of two years from the taking out of the policy and after other persons have become members of the company, and after the company has become insolvent, be permitted to set up against the collection of assessments, parol statements made to him by a representative of the company as to the amount of premiums which he would have to pay.

Argued Dec. 12, 1900. Appeal, No. 202, Oct. T., 1900, by defendant, from order of C. P. No. 2, Phila. Co., Dec. T., 1898, No. 1030, making absolute rule for judgment, for want of a sufficient affidavit of defense in case of Charles S. Schofield, Receiver of the Ætna Mutual Live Stock Insurance Company v. Maurice Hayes. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit to recover assessments on policy of insurance.

The defendant filed the following affidavit of defense :

Defendant is informed and believes, and therefore avers, that the policies of insurance attached to and made part of plaintiff's statement of claim are cash policies, and not assessable policies, and therefore that the sum of $1,137.24 claimed from defendant as assessments upon the policies aforesaid is not legally due and owing from defendant to plaintiff, and cannot in law be recovered as such.

Defendant avers that before he consented to take out the policies aforesaid, and as the inducement for his so doing, plaintiff exhibited to defendant its table of rates of insurance (expressly mentioned in the body of the policies annexed to plaintiff's statement) and assured defendant that if he would take out the said policies for the period of three years at the estimated value of $200 for each horse insured, he would be placed in class " C " of said table of rates, and that the only payments which would be required from him, during the life of the said policies, would be an entrance fee and first mortuary fee of $8.00, payable on the issuance of each policy ; a mortuary call of $2.00 due three months thereafter on each policy ; a premium of $4.00 on each policy during the second year, and a premium of $4.00 during the third year, making a total payment of $18.00 on each policy for the entire period of three years.

The said table of rates thus exhibited to defendant by plain-

tiff, and expressly referred to in the policies of insurance annexed to plaintiff's statement, reads as follows:

**TABLE OF RATES.**
**CLASS "C."**

| Est. Value. | Ins. Value. | Entrance and 1st Mortuary Fee. | Mortuary Call due in 3 mos. | Cost 2d year. | Cost 3d year. | Total 3 years. | Average per cent per year. |
|---|---|---|---|---|---|---|---|
| $100 | $75 00 | $4 00 | $1 00 | $2 00 | $2 00 | $9 00 | 3 per cent. |
| 133 | 100 00 | 5 32 | 1 33 | 2 66 | 2 66 | 11 97 | " |
| 150 | 112 50 | 6 00 | 1 50 | 3 00 | 3 00 | 13 50 | " |
| 166 | 124 50 | 6 64 | 1 65 | 3 32 | 3 32 | 14 94 | " |
| 175 | 131 25 | 7 00 | 1 75 | 3 50 | 3 50 | 15 75 | " |
| 200 | 150 00 | 8 00 | 2 00 | 4 00 | 4 00 | 18 00 | " |
| 225 | 168 75 | 9 00 | 2 25 | 4 50 | 4 50 | 20 25 | " |
| 250 | 187 50 | 10 00 | 2 50 | 5 00 | 5 00 | 22 50 | " |
| 275 | 206 25 | 11 00 | 2 75 | 5 50 | 5 50 | 24 75 | " |
| 300 | 225 00 | 12 00 | 3 00 | 6 00 | 6 00 | 27 00 | " |
| 350 | 262 50 | 14 00 | 3 50 | 7 00 | 7 00 | 31 50 | " |
| 400 | 300 00 | 16 00 | 4 00 | 8 00 | 8 00 | 36 00 | " |

Defendant avers that prior to the issuance of the said policies of insurance he, the defendant, had no notice or knowledge, nor was he in any way informed by plaintiff, of any liability on his part, present or prospective, to which he would be exposed as holder of said policies, other than the liability to pay the fixed premiums aforesaid, aggregating eighteen on each policy for the three years covering the said insurance, but on the contrary was assured that there would be no further liability; and that upon the faith of plaintiff's representations, as aforesaid, defendant agreed to take out the said policies, and did take out the said policies, upon the terms aforesaid, and upon no other terms. Thereupon plaintiff issued to defendant, upon the payment of the entrance and first mortuary fee of $8.00 on each policy, as aforesaid, the policies annexed to plaintiff's statement, by the second clause of each of which (as by reference thereto will more fully appear) it is provided:

"Whereas, the said Maurice Hayes has made application for insurance to the Ætna Mutual Live Stock Insurance Company on the above-described animal, and has paid the sum of eight dollars as entrance and first mortuary fee, and has agreed to pay, or caused to be paid, all such premiums or payments required, or agreed to be made now or hereafter, in connection with this insurance, as may be specified in the constitution and by-laws of the aforesaid company, per table of rates, and referred to in the application made for this insurance," etc.

Defendant avers that his liability on the twenty-seven policies of insurance annexed to plaintiff's statement, as aforesaid, for the three years covered by the insurance, would have amounted, at the aforesaid rate of $18.00 for each policy, as provided by said table of rates, to the sum of $486. Of this amount defendant avers that he has paid to the plaintiff company the sum of $190, leaving a balance of $296 still unpaid, which defendant is ready and willing to pay, and hereby tenders to the plaintiff, if the court should be of opinion that the said balance is properly due to the plaintiff.

All of which defendant expects to prove at the trial of the cause.

The court made absolute a rule for judgment.

*Error assigned* was the order of the court.

*Thomas H. Fahy*, for appellant.

*William A. Carr*, with him *Sidney L. Krauss* and *W. Horace Hepburn*, for appellee.

OPINION BY RICE, P. J., May 23, 1901:

This was an action of assumpsit brought by the receiver of an insolvent live stock insurance company to recover from the defendant the amount of certain assessments levied to pay certain losses incurred while the defendant was a member of the company; these assessments being part of a general assessment levied by the receiver upon all policy holders, by virtue of a decree of the court of common pleas of Dauphin county.

The defendant alleged in his affidavit of defense that " the policies of insurance attached to and made part of plaintiff's statement of claim are cash policies, and not assessable policies, and, therefore, that the sum of $1,137.24, claimed from defendant as assessments upon the policies aforesaid is not legally due and owing from defendant to plaintiff, and cannot in law be recovered as such."

1. Before considering the other averments of the affidavit of defense, it will be well to determine whether the policies, on their face, are assessable policies. In the determination of this question we recognize the principle declared in Given v. Rettew, 162 Pa. 638, that where an insurance company, although organized upon the mutual plan, has the power to issue cash policies, the mere fact of membership does not necessarily imply liability to assessment. Going, then, to the defendant's application, we find that it was made, " subject to all limitations, conditions and requirements of the constitution and by-laws, all of which are hereby made part of the contract or policy to be issued on this application." Article 5 of the constitution provides as follows : " The plan is mutual, and all losses and expenses shall be paid by assessments levied on the members or policy holders of the company." Article 1 of the by-laws is as follows : " This is a mutual insurance company in which all policy holders are members. The expenses and losses properly certified and approved by the board of directors shall be paid by assessments levied by the board of directors upon the members or policy holders of the com-

pany." Article 2 further provides, "that every person apply-
ing for insurance in the company shall, amongst other things,
pay an admission premium of four per cent on the estimated
value of the animal to be insured, and agree to pay all assess-
ments made by the board of directors during the term of in-
surance specified in the application, for losses properly certified
and approved by the board of directors and expenses incurred
between the dates of the policy." Article 20 provides as fol-
lows: " This company is not required by law to maintain a
reserve fund, as required of stock companies, but shall pay
its losses by assessment upon its members."

We find nothing in either the constitution or the by-laws
which gives warrant for the supposition, that the plan of in-
surance adopted by this company contemplated a special con-
tract with an individual member and policy holder limiting his
liability to a fixed sum, whilst other members and policy holders
were liable to assessment for losses as they might occur. Nor
do we think the contracts in question are to be so construed.
Each of the policies, after describing the animal insured, and
reciting the fact that the defendant had made application for
insurance and had paid the entrance and first mortuary fee,
further recites, that he " has agreed to pay or cause to be paid
all such premiums or payments required, or agreed to be made
now or hereafter, in connection with this insurance as may be
specified in the constitution and by-laws of the aforesaid com-
pany, per table of rates, and referred to in the application
made for this insurance, and which application, constitution
and by-laws are a part of this contract."

It is seen from the foregoing, that the defendant's liability
does not rest alone upon a contract implied from mere member-
ship in a mutual company. There was, in addition, an express
contract on his part to pay all such premiums or payments as
were " specified " in the constitution and by-laws, and " referred
to " in the application. The only premiums or payments " re-
ferred to " in the application were the admission or first mort-
uary fee and those required by the constitution and by-laws,
and the only premiums or payments " specified " in the con-
stitution and by-laws were an admission premium of four per
cent on the estimated value of the animal insured, and the as-
sessments to be made from time to time to pay losses and

expenses. No reference is made in the application or in the constitution or in the by-laws to any "table of rates," unless the rate by which the amount of the admission fee was to be fixed be so regarded. Granting, even, that the policy refers to a "table of rates" not mentioned or specified in the constitution and by-laws, and is to be construed as importing an undertaking on the defendant's part to pay certain fixed charges therein specified, this does not exclude liability to assessment, when, by reason of the exhaustion of the fund thus created, an assessment is necessary to pay losses. Whatever doubt there may be as to the meaning of the words "per table of rates," this seems to be clear, that the defendant in applying for and accepting the policy consented to be bound, so far as rates, premium and payments were concerned, by the terms and provisions of the constitution and by-laws of the society of which he became a member. The case is radically different from Given v. Rettew, because, in that case, there was evidence on the face of the policy itself that it was for cash alone, and, therefore, the defendant was not bound to suppose that "there might be a by-law which contradicted the face of the policy and turned it into a contract liable to assessment." In the present case, the defendant accepted the constitution and by-laws as part of the contract, and referred to them as fixing his liability. The distinction was recognized by Judge McPherson in the case cited, when, after discussing the question as to the presumption that one about to become a member of a mutual society has made himself acquainted with its regulation, he says: "If he knows of the by-laws and accepts them as a part of his contract—for example, if they are referred to therein—they bind him; but if he makes a contract which excludes them in any particular, in that particular they do not bind him." The contract in question is one of the former, not of the latter kind, and clearly does not exclude liability to assessment in accordance with the plan of insurance adopted by this company as shown by its constitution and by-laws.

2. The defendant avers further, that before he consented to take out these policies and as the inducement for his so doing, the plaintiff (evidently meaning some officer or agent of the plaintiff) exhibited to him a "table of rates" of insurance and assured him that the only payments which would be required

from him on each policy would be an entrance and first mortuary fee of $8.00, a mortuary call of $2.00 due three months from the date of the policy, a premium of $4.00 in the second year, and a like premium in the third year, "making a total payment of $18.00 on each policy for the entire period of three years." In connection with this averment attention should be called to the uncontradicted averment of the plaintiff's statement that the assessment in question was made, in part at least, to pay losses which accrued upon policies issued after the defendant became a member.

In his application the defendant declared, quoting therefrom, " that the policy to be issued hereon shall be based entirely on the statements and declarations made in this application, and not upon any statements or promises made by or to the solicitor or other person professing to represent said company." There is no allegation that he was induced by any fraud to sign this application or that he was ignorant of the terms of the policies, including the provisions of the constitution and by-laws, when he accepted the policies. Whether or not he knew of those provisions prior to the issuance of the policies, he was certainly affected with notice of them after they were issued, and during the whole period of two years between the issuance thereof and the appointment of the receiver, and this he does not deny.

We need not stop to inquire as to the validity of this defense in a suit brought by the company in which the rights of subsequent policy holders would not be affected. We may remark, however, that as there is no allegation that anything was said or done at the time the defendant accepted the policies, which can be regarded as a misrepresentation of the contents of the instruments, or which put him off his guard and induced him not to look into them, it is difficult to see upon what ground he can ask to have them reformed and converted from assessable into nonassessable policies. For, a man cannot ask to be relieved from his written contract upon the ground of mutual mistake, or of fraud practiced upon him in the execution or acceptance of the paper, without specifically alleging facts from which the mistake or fraud may be clearly and indubitably inferred. "A fortiori is this true, where he has failed to exercise the most common prudence, has accepted and en-

joyed the full benefits of the contract, and the rights of innocent third persons will be prejudically affected: " Sparks v. Flaccus Glass Company, 16 Pa. Superior Ct. 119. By all of the authorities, including those cases in which fraud and misrepresentation were specifically alleged, it has been held to be the duty of a member of a mutual insurance company, doing business upon the assessment plan, who alleges such a defense as is now under consideration, to act promptly. The reason is plain, and was thus stated by Judge WILLARD, following earlier cases, notably Dettra v. Kestner, 147 Pa. 566, in Kramer v. Boggs, 5 Pa. Superior Ct. 394: "The utmost good faith among the members is absolutely necessary in order to successfully sustain this class of insurance. One man becomes a member and gives his obligation on the faith of the membership and obligations of others, and in case of loss he not only has an equitable but a legal claim upon his fellow members to which they are bound to respond, and the plea of misunderstandings with the agent, or even his fraud or the fraud of the company, will not prevail so as to defeat the just rights and equities of fellow members." This principle has been recognized and applied in later cases amongst which may be mentioned, Fidelity Mutual Insurance Co. v. Vitale, 10 Pa. Superior Ct. 157, Schofield v. Leach, 15 Pa. Superior Ct. 354, and Susquehanna Mutual Fire Insurance Co. v. Oberholtzer, 172 Pa. 223. In the last cited case there were false representations as to the contents of the policy, relying upon which the applicant accepted the policy and placed it in his safe without reading it. He kept it there for over a year and in the mean time voluntarily paid two assessments. Speaking of his right to rescind the contract upon discovery that the policy expressed a different contract than that agreed upon between him and the agent, and of his liability for subsequent assessments, Mr. Justice DEAN said: "While his right to avoid the policy, if exercised within a reasonable time, is clear, he cannot, as to subsequent members, openly assume all the privileges and obligations of membership for more than a year, and then deny his liability to contribute along with those who may have been induced to become members on the faith of his membership: Dettra v. Kestner, 147 Pa. 566. While this citation is that of a bankrupt company, the rule and reason for it are equally applicable to

110, (1901).]              Opinion of the Court.

the facts in the case before us." We need not cite other authorities or prolong this discussion. We are of opinion that the policies on their face were assessable, and that the defense based on the representations alleged to have been made before the acceptance of the policies is not valid in an action brought by the receiver of the insolvent company.

Judgment affirmed.

BEAVER, J., dissents.