SUPREME COUNCIL A. L. H. v. BLACK.

(Circuit Court of Appeals, Third Circuit.   June 16, 1903.)

Nos. 27, 28.

1. BENEFIT LIFE INSURANCE—REPUDIATION OF CONTRACT BY ASSOCIATION—
   RIGHT OF MEMBER TO RESCIND AND RECOVER PAYMENTS.
   Where an incorporated fraternal benefit association which has entered
   into insurance contracts with its members, without legal right renounces
   such contracts by the adoption of a by-law arbitrarily reducing the amount
   payable on the same below that which it contracted to pay, and by put-
   ting such by-law into effect by making assessments on the new basis
   and notifying members of the reduction, a member who has performed
   the contract on his part, and who has not consented to such reduction,
   may at his election treat the contract as rescinded, and sue at once to
   recover the amounts he has paid thereon.

In Error to the Circuit Court of the United States for the Eastern
District of Pennsylvania.

For opinion below, see 120 Fed. 580.

Frank P. Prichard, for plaintiff in error.

George Henderson and Charles H. Sayre, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and BUFFING-
TON, District Judge.

ACHESON, Circuit Judge.   Hugh W. Black, having become a
member of Royal Oak Council American Legion of Honor, received
from the Supreme Council American Legion of Honor, a corporation
existing under the laws of the state of Massachusetts, a benefit cer-
tificate, dated March 31, 1888, showing the contract between him
and the Supreme Council American Legion of Honor, and whereby
the latter agreed to pay to Margaret A. Black, the wife of Hugh W.
Black, $5,000 upon satisfactory proof of his death, subject to certain
specified conditions.

Black paid all the assessments (amounting to the sum of $3,692.40)
called for under the contract, and otherwise complied with its terms,
until the corporation, without his consent, in August, 1900, adopted,
and on October 1, 1900, proceeded to put into effect, an amendment
to its by-laws, providing as follows:

"Two thousand dollars shall be the highest amount paid by the Order on
the death of a member, upon any benefit certificate heretofore or hereafter
issued."

On October 1, 1900, Black was officially notified in writing that an
assessment (based upon the amended by-law) had been called, the
notice on its face containing this memorandum: "Policy, two thou-
sand dollars."   By letter of October 31, 1900, Black gave the corpo-
ration the following notice:

"I therefore notify you that as the amendment is illegal and violates the
contract made by the Order with me and was made without my consent, I
decline, for these reasons, to pay the assessment above mentioned; and shall
consider that there has been a breach of the contract of insurance on the
part of the Order."

On March 28, 1901, Black brought this action in the Circuit Court against the Supreme Council American Legion of Honor to recover the amount of the assessments paid by him to the defendant, with interest. Pursuant to a stipulation, the case was tried by the court, and the finding was in favor of the plaintiff for the moneys Black had paid to the defendant under the contract, with interest from the date of suit; and, accordingly, judgment was entered for the plaintiff for $4,053.03.

The counsel for the plaintiff in error in their brief assume that the assignments of error "practically raise two questions," which they state thus:

"First. Did the passage of the by-law of 1900, which under the decisions of this court was a void and unreasonable by-law and not binding on the members, constitute such an anticipatory breach of the plaintiff's contract that he could for that cause alone sue for money damages as upon a broken contract?

"Second. If the passage of the by-law of 1900 was such an anticipatory breach, was the plaintiff entitled to recover as damages therefor, not the value of the contract or the loss to plaintiff at the time of breach, but the consideration paid by plaintiff as if paid under a contract void ab initio?"

Before proceeding to a discussion of the law of the case, certain facts disclosed by this record are to be noted. More was done here than the mere passage of the amended by-law of 1900. The corporation put the amended by-law into operation. Calls for assessments were made upon the new basis. The official notification to Black treated his insurance as reduced from $5,000 to $2,000. Black had received no "sick or disability benefits." No payment of any nature had been made by the corporation on its certificate. Black had received nothing of value. The partial performance of the contract had been altogether on his part, to wit, the payment by him to the corporation of assessments as called. The defendant was incorporated for the purpose, inter alia, of establishing "a benefit fund from which, on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding five thousand dollars shall be paid to the family, orphans, or dependents, as the member may direct." In addition to such "benefit fund," the defendant, by the statutes of Massachusetts, was authorized to "create, collect, maintain, disburse and apply an emergency fund in accordance with its by-laws," to be "invested in securities in which insurance companies are allowed by law to invest their capital." On October 1, 1900, the date when the defendant's amended by-law was put into effect, the defendant's emergency fund amounted to the sum of $414,937.21. The defendant corporation, it will be perceived, carried on the business of a fraternal insurance society, and it had large assets for its general purposes.

Now, as was pointed out by the Circuit Court of Appeals for the Sixth Circuit in Supreme Council American Legion of Honor v. Orcutt, 119 Fed. 682, 686, when this incorporated beneficial association "enters into contract relations with its members, it assumes obligations which become subject to the rules and principles which govern contracts in general." Let us then turn to the decisions here apposite.

In Roehm v. Horst, 178 U. S. 1, 13, 20 Sup. Ct. 780, 44 L. Ed. 953, the Supreme Court of the United States, upon a review of the cases, American and English, relating to anticipatory breaches of an executory contract by a refusal on the part of one party to it to perform it, approved as reasonable the rule laid down in Hochster v. De La Tour, 2 El. & Bl. 678, namely, that a party to an executory agreement may, before the time for executing it, break the agreement either by disabling himself from fulfilling it or by renouncing the contract, and that an action will lie for such breach before the time for the fulfillment of the agreement: In delivering the opinion of the Supreme Court, Chief Justice Fuller quoted with approval what was said in Johnstone v. Milling, L. R. 16 Q. B. Div. 460, 467, by Lord Esher, Master of the Rolls, who put the principle thus:

"When one party assumes to renounce the contract, that is, by anticipation refuses to perform it, he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not of course amount to a rescission of the contract because one party to a contract cannot by himself rescind it; but by wrongfully making such a renunciation of the contract he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect of such wrongful rescission. The other party may adopt such renunciation of the contract by so acting upon it as to declare that he too treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation."

We see no reason why this principle is not applicable to the present case. The renunciation by the defendant of its insurance contract was most clearly manifested, first, by the adoption of the amended by-law, and then by its subsequent course of conduct in putting the amended by-law into effect and undertaking to reduce Black's insurance. To escape the consequences of its deliberate and unequivocal repudiation of the contract, the defendant, when sued by Black, cannot be heard to assert its inability to annul the contract. Roehm v. Horst, supra; Moorhead v. Fry, 24 Pa. 37. In the latter case the court said:

"It will not do to aver the inability of Nelson to set aside the contract as a reason why the attempt to do so will not authorize Fry to treat it as rescinded and recover for his labor upon a quantum meruit."

In Ballou et al. v. Billings, 136 Mass. 307, 309, it was held that if one party to a contract, which has been partly performed by payment of money by the other party, totally repudiates it when the other party is not in default, the latter may rescind the contract, and maintain an action to recover back the money paid by him. The court there pointed out that the defendants derived their right to keep the money only from the contract which they had repudiated, and added:

"Rescission, or avoidance properly so called, annihilates the contract, and puts the parties in the same position as if it had never existed."

The defendant in the case before us having wrongfully renounced its contract, we think that, upon principle as well as upon authority, Black had the option to treat the contract as rescinded, and the right to sue immediately to recover back the moneys he had paid on the faith of the contract.

The following passage from Niblack on Beneficial Societies, p. 522 (2d Ed.) is well sustained by decisions of the courts:

"Sec. 280. When a mutual benefit society has refused to receive from the member the amount of the assessment on his certificate, basing such refusal on the ground that the rights of the member had been forfeited by the non-payment of the assessment at the time stipulated for its payment, the member, if the refusal is wrongful, has an election of remedies. He may, if it be practicable under the plan of paying assessments, tender the assessments as they become due until the certificate is payable, and then his beneficiary may recover the amount provided for therein in an action on the contract. He may, in an action for the rescission of the contract, recover back the assessments paid, with interest; or he may maintain an action to obtain a decree ordering that the certificate be continued in force and recognized as valid by the society."

In Fawcett v. Iron Hall, 64 Conn. 170, 192, 29 Atl. 614, 621, 24 L. R. A. 815, the court said:

"The performance on its part of the contract of the order with the certificate holders having, by its fault, become impossible, each of these had the right to elect whether to treat the contract as rescinded and demand a return of what he had paid in on it, or to treat it as in force and claim the damage resulting to him from the corporation having put itself in a condition incompatible with the fulfillment of its engagements."

In Ellis v. Alta Friendly Society, 16 Pa. Super. Ct. 607, it was declared that where a person has been wrongfully excluded from membership in a beneficial association he has an election of remedies, and that if no benefits have been received he may treat the contract as rescinded, and sue to recover back the money paid under it.

In People's Mutual Insurance Fund v. Bricken, 92 Ky. 297, 17 S. W. 625, the court said:

"The appellees declining to surrender their certificates for new insurance or to sell them, or to pay the assessments under the endowment system, their membership was declared forfeited. They brought these actions to rescind their contract with the appellant, and to recover back the dues paid by them. It seems to us that their cause is just. They had binding contracts with the appellant, which the appellant had no power to change or abandon without their consent."

It was accordingly held that there was a breach of contract on the part of the corporation, which absolved the appellees from all obligation on their certificates, and entitled them to recover back the consideration they had paid thereon.

According to the clear weight of authority, if an insurance company wrongfully cancels a policy, or otherwise wrongfully renounces the contract, the insured may, at his election, treat the contract as rescinded, and recover back all the premiums he has paid. Braswell v. The American Life Insurance Co., 75 N. C. 8; McKee v. Phoenix Life Insurance Co., 28 Mo. 383, 75 Am. Dec. 129; McCall v. Same, 9 W. Va. 237, 27 Am. Rep. 558; True v. Bankers' Life Association, 78 Wis. 267, 47 N. W. 520; Van Werden v. Assurance Society, 99 Iowa, 621, 68 N. W. 892; The Union Central Life Insurance Co. v. Pottkor, 33 Ohio, 459, 466, 31 Am. Rep. 555.

In the latter case the Supreme Court of Ohio, after citing authorities to sustain its ruling, said:

"And upon principle how stands the case? The plaintiff in error, by an act willfully wrongful, has declared its liability as an insurer terminated by a forfeiture of the policy, and refuses any longer to carry the risk assumed by the terms of its contract. And this it does before any loss has arisen to itself, or any benefit has been derived from the risk to the insured. The partial performance of the contract has been wholly on the part of the insured, and has consisted only in the payment of premiums. They have, so far, received nothing of value from the company which it might be against equity or good conscience to retain. They are in no better condition than they would be if no policy had been issued. If the company receives no compensation for the risk which it carried for several years, this result is attributable only to its own willful default."

The established rule in Pennsylvania is in harmony with the foregoing decisions. American Life Insurance Co. v. McAden, 109 Pa. 399; 1 Atl. 256; Kerns v. Prudential Insurance Co., 11 Pa. Super. Ct. 209. In the former of these cases the insurance company, without justification, having declared the policy forfeited, the Supreme Court of the state held that the insured had the right to rescind the contract and recover back the premiums paid, with interest from date of demand. And the court said:

"In the case at bar, the rights of the parties under the contract of insurance had attached, but the plaintiffs had never received any actual benefit from it. They may in some sense, perhaps, be said to have enjoyed the protection which the policy afforded in the event of the husband's death, but, as that event did not occur, the policy has as yet been of no appreciable actual advantage to the plaintiffs, and no real disadvantage to the defendant. The parties, for anything that appears, upon the plaintiffs' recovery, are placed precisely in the same situation they were in before the contract was made; for although the company carried the risk, and the plaintiff, Mary F. McAden, at all times during the continuance of the contract, upon the happening of the event provided against, was entitled to the indemnity it secured, yet the company has paid nothing and the plaintiff has received nothing. As in the case of any other contract, the parties were each entitled, during its continuance, according to its terms."

We agree with the court below that the judgment in the case of Lovell v. St. Louis Mutual Life Insurance Co. et al., 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423, is not in conflict with the decisions of the courts of Pennsylvania hereinbefore cited. The facts in Lovell's Case were peculiar and complicated. It is, however, enough to say that, in the exercise of a right which the policy gave him, Lovell had surrendered his policy for the purpose of having it exchanged for a paid-up policy. But both he, and the company's agent to whom he delivered the policy to be transmitted to the home office, acted under a mutual mistake as to what Lovell was entitled to receive in exchange. The court, however, held that the company was chargeable with notice of the understanding upon which the surrender had been made to its agent, and if it did not agree thereto the company should have notified Lovell. The court, then, holding that Lovell was in no default, and had forfeited none of his rights under the policy, decided that "the amount to which the complainant is entitled is what is called and known in the life insurance business as the value of his policy at the time it was surrendered, with interest, less the amount of his premium note, which should be surrendered and canceled." The bill there was not in disaffirmance of the contract, as is the suit here. Moreover, not only do the two cases differ in their facts, but Black's

benefit certificate, so far as appears, had no surrender value whatever.

We are of opinion that this case was rightly decided by the Circuit Court, and, finding no error in the record, the judgment is affirmed.