DAIX v. SUPREME COUNCIL A. L. H.

(Circuit Court, E. D. Pennsylvania. January 15, 1904.)

No. 58.

1. BENEFIT LIFE INSURANCE—RENUNCIATION OF CONTRACT BY ASSOCIATION—
DELAY OF MEMBER IN EXERCISING RIGHT TO RESCIND.

Where an incorporated fraternal life insurance association renounced its contracts with members by adopting an invalid by-law attempting to reduce the amount payable on its certificates of membership and by levying an assessment thereunder, the right of a member to elect to treat the contract as rescinded, and to recover the payments made by him, is not lost by delay so long as he has not paid the illegal assessments, nor done anything to affirm the action taken, unless in consequence of such delay the position of the association has been altered to its injury.

2. SAME—ACTION TO ENFORCE RESCISSION—DEFENSES.

In an action by a member of a life insurance association to enforce a rescission of his contract and recover payments made thereunder because of a renunciation of the contract by the association, an affidavit of defense stating generally that by reason of plaintiff's delay in electing to rescind the association has altered its position to its prejudice, without setting out in detail any facts to support such statement, and where the association has always denied, and still denies, plaintiff's right to rescind, is insufficient to state a defense.

3. SAME—LIMITATION.

A provision in the by-laws of a benefit life association limiting the time for bringing an action on any cause or claim arising out of any membership certificate to one year from the time the cause of action accrues, which, from the context, is shown to relate solely to actions after the death of a member to recover on his certificate, does not apply to an action by a member to enforce a rescission of his contract on account of an anticipatory breach thereof by the association.

At Law. Action to enforce rescission of a contract of life insurance and to recover payments made thereunder. On motion for judgment for want of sufficient affidavit of defense.

John H. Sloan, for plaintiff.
Murdoch Kendrick and Frank P. Prichard, for defendant.

J. B. McPHERSON, District Judge. It is conceded by the defendant that the questions raised by its two affidavits of defense have been decided against it by the Court of Appeals for this Circuit in the case of Supreme Council, etc., v. Black, 123 Fed. 650, except the effect of the present plaintiff's delay in rescinding his contract of insurance, and the effect of a by-law that was not set up as a defense in the suit brought by Black.

With regard to the first of these questions the facts are as follows: The defendant passed an invalid by-law in August, 1900, whereby it sought to reduce the sum payable upon the plaintiff's policy from $5,000 to $2,000, and on October 1, 1900, put the by-law into effect by levying an assessment upon the new basis, and demanding payment thereof. Due notice of the assessment, which was payable on or before October 31st, was given to the plaintiff, but he neither made payment nor took any other action in the matter until February 21, 1903, when he addressed a letter to the treasurer of the defendant,

in which, after referring to the attempt to reduce the sum payable upon his certificate, he said:

"The corporation itself having thus broken the contract between us, I was justified in refusing to pay further assessments. I therefore give the corporation, and you, notice that I have elected to rescind the contract, and demand that the assessments which have been paid by me to the corporation shall be returned to me with interest."

This suit was brought four months afterwards, on June 22, 1903. Concerning the effect of this delay from October 31, 1900, to February 21, 1903, the supplemental affidavit of defense makes the following averments:

"On October 1, 1900, plaintiff was duly notified, in common with all other members, of an assessment duly called. This notice differed from its previous assessments only in being smaller in amount. Under the by-laws of the defendant, the plaintiff had until the 31st of October to pay the assessment, and in case of nonpayment would be suspended from the order, subject to certain rights of reinstatement. Plaintiff made no protest against the passage of the by-law or against the assessment, and made no reply to the notice sent him. He did not rescind or attempt to rescind the contract, or tender the amount of assessment under the former by-laws, or notify defendant or any of its officers that he objected to or dissented from the by-law. On the contrary, he continued for thirty days to remain a member, and at the end of that time allowed himself to be suspended for nonpayment of assessment under the rules. From that time until February 21, 1903, he made no claim that defendant owed him any money, nor any demand for the repayment of dues, nor did he claim that defendant had broken any contract, or that he had exercised any right of rescission. On the contrary, by his silence, he led defendant to believe that he had acquiesced in the change, but had not desired to continue his membership, and had therefore allowed himself to be suspended for nonpayment of assessments. In the meanwhile the defendant had made assessments on the basis that there was no claim by plaintiff. New members had been admitted, and old ones, who would have been assessed to pay plaintiff's claim, had died, and their beneficiaries had received the amounts of their certificates. Defendant is advised that, if plaintiff ever had the right to rescind his contract of membership, he is estopped by his silence and delay from now exercising that right when the position of defendant has so materially changed."

For present purposes these averments must be assumed to be true, and the question for decision is whether they are sufficient to prevent judgment. The facts being undisputed, the court must decide upon their effect. The rule to be followed in determining at what moment of time an executory contract has been rescinded because of an anticipatory breach is thus stated by the Circuit Court of Appeals in Black's Case, adopting the language of the Master of the Rolls in Johnstone v. Milling, L. R. 10 Q. B. Div. 460, 467, which the Supreme Court of the United States also approved in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953:

"Where one party assumes to renounce the contract—that is, by anticipation refuses to perform it—he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not, of course, amount to a rescission of the contract, because one party to a contract cannot by himself rescind it; but by wrongfully making such a renunciation of the contract he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect of such wrongful rescission. The other party may adopt such renunciation of the contract by so acting upon it as

to declare that he, too, treats the contract as at an end, except for the purpose of bringing an action upon it for the damages sustained by him in consequence of such renunciation."

The plaintiff's policy, therefore, was not rescinded until he gave notice on February 21, 1903, that he accepted the defendant's renunciation of the contract. Was this too late? I think that the sound rule, by which the answer to this question should be determined, is the rule laid down by the Court of Exchequer Chamber in Clough v. London, etc., Railway Co., L. R. 7 Exch. 27, 34, 35. That was a case of rescission for fraud, but I see no difference in principle. Whatever the cause may be that gives rise to the right to rescind, the question must still remain, how soon must the right be exercised? The language of the court is as follows:

"The fact that the contract was induced by fraud did not render the contract void, or prevent the property from passing, but merely gave the party defrauded a right, on discovering the fraud, to elect whether he would continue to treat the contract as binding, or would disaffirm the contract and resume his property. This was not controverted at the bar, and it is not necessary to cite authorities for it.

"And we further agree that the contract continues valid until the party defrauded has determined his election by avoiding it. And, as is stated in Com. Dig. 'Election,' c. 2, if a man once determines his election, it shall be determined forever; and, as is also stated in Com. Dig. 'Election,' c. 1, the determination of a man's election shall be made by express words or by act. And, consequently, we agree with what seems to be the opinion of all the judges below, that, if it can be shown that the London Pianoforte Company have at any time, after knowledge of the fraud, either by express words or unequivocal acts, affirmed the contract, their election has been determined forever. But we differ from them in this: that we think the party defrauded may keep the question open so long as he does nothing to affirm the contract. The principle is precisely the same as that on which it is held that the landlord may elect to avoid a lease and bring ejectment when his tenant has committed a forfeiture. If, with knowledge of the forfeiture, by the receipt of rent or other unequivocal act, he shows his intention to treat the lease as subsisting, he has determined his election forever, and can no longer avoid the lease. On the other hand, if, by bringing ejectment, he unequivocally shows his intention to treat the lease as void, he has determined his election, and cannot afterwards waive the forfeiture. Jones v. Carter, 15 M. & W. 718. We cannot do better than to cite the language of Bramwell, B., in Croft v. Lumley, 6 H. of L. 705, which precisely expresses what we mean. He says: 'The common expression "waiving a forfeiture," though sufficiently correct for most purposes, is not strictly accurate. When a lessee commits a breach of covenant on which the lessor has a right of re-entry, he may elect to avoid or not avoid the lease, and he may do so by deed or by word. If, with notice, he says, under circumstances which bind him, that he will not avoid the lease, or he does an act inconsistent with his avoiding—as distraining for rent (not under the statute of Anne), or demanding subsequent rent—he elects not to avoid the lease; but if he says he will avoid, and does an act inconsistent with its continuance—as bringing ejectment—he elects to avoid it. In strictness, therefore, the question in such cases is, has the lessor, having notice of the breach, elected not to avoid the lease, or has he elected to avoid it, or has he made no election?'

"In all this we agree, and think that, mutatis mutandis, it is applicable to the election to avoid a contract for fraud.

"In such cases the question is, has the person on whom the fraud was practiced, having notice of the fraud, elected not to avoid the contract, or has he elected to avoid it or has he made no election?

"We think that, so long as he has made no election, he retains the right to determine it either way, subject to this: that if, in the interval whilst he

is deliberating, an innocent third party has acquired an interest in the property, or if, in consequence of his delay, the position even of the wrongdoer is affected, it will preclude him from exercising his right to rescind.

"And lapse of time without rescinding will furnish evidence that he has determined to affirm the contract; and, when the lapse of time is great, it probably would, in practice, be treated as conclusive evidence to show that he has so determined."

This statement of the law was approved by the same tribunal in the later case of Morrison v. Ins. Co., L. R. 8 Exch. 197, 203, in which the court said further (page 205):

"The learned judge further told the jury that they were to consider whether the election was exercised within a reasonable time, telling them that the party entitled to elect must do so within a reasonable time. It is not necessary to consider whether this direction is correct, or whether the party entitled to elect may not do so at any time, unless in the meantime he has elected to affirm the contract, or unless the rights of third parties have intervened, or the other party to the contract has altered his position under the belief that the contract was a subsisting one; for, if the latter be the correct view, the direction of the learned judge was too favorable to the plaintiff, and, of course, he cannot complain of it.

"If, indeed, it had appeared that, in consequence of the delay and of the absence of protest by the defendants, the plaintiff's position had been altered, and he had thereby been induced to believe that the defendants intended to waive their right to avoid the contract of insurance, and had subsequently abstained from effecting insurance elsewhere, we should probably have thought that, though there had been in fact no exercise by the defendants of their right of election, the case fell within the view taken in Clough v. London & Northwestern Railway Co., and that this question ought to have been submitted to the jury."

The correctness of this rule is, I think, scarcely to be questioned. The defendant's action in renouncing the contract gave to the plaintiff an unquestioned right to rescind, and there is nothing in the facts of the case that points to a definite time before which he was obliged to exercise his right. No doubt he was bound in fairness to the defendant to make up his mind concerning his course, and to notify the defendant thereof, before the position of the latter should be changed to its disadvantage; but so long as no such change took place it could made no difference to the defendant whether the plaintiff rescinded in one month or in two years. Their relations were wholly suspended. The defendant had gone through the form of expelling the plaintiff for failure to pay the unlawful assessment of October 1, 1900, and no longer recognized him as a member. The lapse of time that appears in this case therefore was of no importance. The plaintiff chose to take the risk that the defendant's position might be changed for the worse during his delay, and I do not see upon what ground the defendant can complain. It is true that silence alone, if persisted in for a long time, might point irresistibly to the conclusion that the plaintiff had acquiesced in the defendant's conduct, and it must be admitted that difficult questions might arise in this region. But in the case now being considered it is not the plaintiff's prolonged silence that is relied upon, but the fact that during his silence the defendant's situation has been changed to its disadvantage. What is to be found in the affidavits upon this point? It will be observed from the paragraph heretofore quoted that the only matter of any substance is, to use

the more concise language of the first affidavit, that "the position of the defendant is materially changed by reason of the delay on the part of the said plaintiff in making a demand on the defendant. During the period of the plaintiff's delay, increased assessments would have been laid upon many members who are now deceased or who have withdrawn from the defendant organization during that time." This seems to me to be wholly insufficient, and the supplemental affidavit does not better it. It is a vague and general averment, without stating in detail any facts to support it, and upon that ground alone I think it might be held to be insufficient. But a more serious objection to its sufficiency lies in the fact that nothing is stated to show that the death or withdrawal of members during the period of the plaintiff's silence has impaired the ability of the defendant to meet the plaintiff's demand, or has thrown a greater burden upon its present membership than they would otherwise have been obliged to bear. Under the constitution of the order, a claim, such as is now being sued for, is to be paid out of the benefit fund (section 53, by-laws), and this is accumulated by periodical assessments according to a rate fixed by section 54, and not by an assessment specially laid. If the order contains as many members now as it did in October, 1900, if the places of those who have died or withdrawn have been taken by other persons, the pecuniary ability of the order not having been impaired, the mere fact that the personnel of the membership has somewhat changed is of no importance. There is a good deal of force, also, in the argument that the defendant has always denied the validity of the plaintiff's claim,. and, indeed, is still denying it; so that the averment that the plaintiff's silence and delay misled the defendant, and prevented the levy of increased assessments upon those who died or withdrew since October 31, 1900, is manifestly without foundation in fact. A valuable note on the subject of rescission will be found in Bryant v. Isburgh (Mass.) 74 Am. Dec. 657 et seq. See, also, note to Johnson v. Evans (Md.) 50 Am. Dec. 674, 675. I think, therefore, that the affidavits of defense fail to show any fact from which it may be properly inferred that the position of the defendant has been changed for the worse during the plaintiff's delay; and, since no facts are set forth, the declaration by the defendant that its position has been changed is merely the expression of its own opinion upon that subject.

The second ground of defense is that the suit was brought more than a year after the cause of action accrued, and that this is too late, because of the following provision in section 68 of the by-laws:

"No action at law or in equity in any court shall be brought or maintained on any cause or claim arising out of any membership or benefit certificate, unless such action is brought within one year from the time when such action accrues."

There are, I think, two sufficient answers to this defense. In the first place, the cause of action did not accrue until the notice of rescission was given on February 21, 1903; and, as suit was brought within four months thereafter, the provision just quoted is not a bar to the action. And the second answer is quite as complete. The defendant has not quoted the whole of section 68 in its affidavit of defense. The by-laws, however, were made part of the record by the first affidavit,

and may therefore be examined by the court.   Such examination discloses the fact that the rest of section 68 is this:

"Such right of action shall accrue 90 days after all proofs called for, in case of death of a member, shall have been furnished.   In all cases where any proof of death has not been furnished by a beneficiary, as required within 12 months after such death, all claims that might have been made shall be regarded as abandoned, and no proof shall thereafter be received, or any claim made thereon."

This section is one of a group of five under the common head "Death-Notice, Proofs, Etc.," and it is perfectly obvious upon reading these sections that they are all dealing solely with the case where a member has died, and a claim is being made upon his certificate.

In my opinion, the affidavits of defense are insufficient, and the plaintiff may therefore enter judgment for the amount claimed in his statement, namely, $2,517.80, with interest from June 21, 1903, the date when suit was brought.