## LIPPINCOTT v. SUPREME COUNCIL A. L. H.

### (Circuit Court, E. D. Pennsylvania. May 18, 1904.)

#### No. 5.

1. BENEFIT LIFE INSURANCE—RENUNCIATION OF CONTRACTS—RIGHT OF MEMBER TO RESCIND.

A life insurance association renounced its contracts with its members, by adopting a by-law, without legal right, by which it attempted to arbitrarily reduce the amount payable on their certificates below the amount therein agreed to be paid, and by levying assessments thereunder on the reduced amount. A member, on receiving notice of the reduction, refused to assent thereto, and declared his intention of enforcing the contract as made. He tendered the assessments at the former rate, but, on their being refused, paid at the reduced rate for more than two years, but always under protest, and he then notified the association of his intention to rescind the contract, and demanded the return of the assessments he had paid before the reduction. *Held*, that while the payments made after the adoption of the by-law were voluntary, and could not be recovered back, they did not bind him as an acquiescence in the action taken, nor did his declaration of his intention to insist on performance constitute an irrevocable election which precluded him from afterwards rescinding the contract and recovering the payments previously made, where the association was not misled or prejudiced by the delay.

At Law. On motion for new trial, and for judgment in favor of defendant notwithstanding the verdict.

Joseph H. Brinton, for plaintiff.

J. F. B. Atkin, Murdock Kendrick, and Frank P. Prichard, for defendant.

J. B. McPHERSON, District Judge. This case presents a question that did not arise in Supreme Council, etc., v. Black, 123 Fed. 650, 59 C. C. A. 414, nor in Daix v. Supreme Council (C. C.) 127 Fed. 374, recently affirmed by the Court of Appeals for the Third Circuit (130 Fed. 101), namely, the right of a member of the defendant order to rescind his contract after having once elected not to rescind. The facts are undisputed. The plaintiff, upon receiving notice of the attempted reduction of his certificate from $5,000 to $2,000, in accordance with the by-law passed in August, 1900, refused to acquiesce, made a vigorous verbal protest at the first meeting of his local council after receiving notice of the change, declared he would never assent to the reduction and would always pay under protest, offered to pay assessments at the old rate, and, when this was refused, paid at the reduced rate, but always insisting that he did not agree

to the change, until February 28, 1903, when he sent the following letter to the council:

"I beg leave to advise you that I shall discontinue to pay the dues and assessments on the $5,000 certificate issued to me and will ask you to return me the amount paid by me on the same up to October 1, 1900, at which time by the adoption of the resolution you abrogated your contract with me."

Notwithstanding the plaintiff's protest, the decisions make it perfectly clear that his payments under the reduced rate were voluntary payments, in the eye of the law. There was no element of duress either of person or of goods, and without duress a payment cannot be regarded as legally involuntary. It may be unwilling or reluctant, but it is nevertheless voluntary, unless it is preceded by the use of what the law will declare to be unlawful compulsion. The rule is thus stated in Radich v. Hutchins, 95 U. S. 213, 24 L. Ed. 409:

"To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary—treating now the redemption of the cotton as made in money, goods being taken as equivalent for a part of the amount— there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment. As stated by the Court of Appeals of Maryland, the doctrine established by the authorities is that 'a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid.' Mayor and City Council of Baltimore v. Lefferman, 4 Gill, 425 [45 Am. Dec. 145]; Brumagim v. Tillinghast, 18 Cal. 265 [79 Am. Dec. 176]; Mays v. Cincinnati, 1 Ohio St. 268."

See, also, Lonergan v. Buford, 148 U. S. 581, 13 Sup. Ct. 684, 37 L. Ed. 569; De la Cuesta v. Ins. Co., 136 Pa. 62, 658, 20 Atl. 505, 9 L. R. A. 631; and the note to Mayor, etc., v. Lefferman, 45 Am. Dec. 145.

Recognizing this fact, the plaintiff does not ask to recover the assessments that have been paid since October 1, 1900, but abandons this amount to the council; confining his demand to the sum paid before that date, and putting his claim on the ground of rescission, and not in any degree upon the ground of involuntary payment. The unquestioned facts show plainly that the plaintiff, by his words and conduct, declared his intention not to assent to the reduction of his certificate, but to hold to the original agreement. This he had a right to do. The defendant's anticipatory breach could not put an end to the contract. The plaintiff's right therein could not be taken away at the mere pleasure of the defendant, but the breach gave the plaintiff a right to choose whether he would assent to the proposed change in the contract, or would refuse such assent. No doubt, he was bound to exercise this right within a reasonable time; but what would be a reasonable time in any case is not to be determined so much by the lapse of weeks or months, as by considering the circumstances of the parties, and by determining what effect may have been produced upon the defendant by a plaintiff's delay. In Black's Case, prompt action was taken by the plaintiff. He made his election within a month. But in Daix's Case a delay of two years and four months was held not to be fatal, because there was no evidence that

the defendant had suffered the slightest injury, or that its situation had been in the least degree altered, during the interval. It seems to me that a similar test should, in fairness and justice, be applied to the facts of the present case. There is no allegation that the defendant has been harmed in any manner by what has taken place, or has been misled or deceived to its hurt. On the contrary, it has been benefited by the receipt of assessments for nearly 2½ years which the plaintiff cannot reclaim, and is probably further benefited because it has exchanged a liability for $5,000 on the original certificate for a liability of $3,875; this being the amount of assessments paid before October 1, 1900. There is no equity in its contention, but the plaintiff must suffer a total loss upon his certificate if his unwise step, no doubt taken in ignorance of the legal effect of payment under protest, was incapable of being retraced. As it seems to me, however, there is no sufficient ground for holding that an election once made is always, and under all circumstances, irrevocable. Suppose that the plaintiff, after having tendered his assessment at the old rate, and having thereby made manifest his intention to insist upon the original contract, had been better advised an hour or two afterwards, or upon the next day, and had then sent a notice such as was sent in February, 1903. Is it possible that any court would enforce so rigorously the rule requiring him to elect within a reasonable time, that under such circumstances his first choice would be held to be final? Of course, no matter how short the time that may elapse between his first and his second choice, if the defendant's situation should be changed, or if it should be misled by his act so that harm would come to it by a change in his attitude, a different question would be presented. It would then be the defendant's right to object, and its objection would certainly be decisive; but where, as here, it is not even averred that injury would be done, and where it also affirmatively appears that the defendant is benefited by the plaintiff's change of mind, it seems to me that the power to change ought not, in equity and good conscience, to be denied him. There is no reason why the defendant should be regarded with special favor. Its unlawful act created the situation that called upon the plaintiff to decide promptly what he would do, or to delay at his own risk, and a hasty or ill-advised decision under such circumstances ought not to be held irrevocable, unless the defendant's condition is somehow changed meanwhile, so that revocation now would do it harm. Of course, acquiescence in the by-law manifested by a deliberate, even if an angry, payment of the reduced rate, would be a different matter. The plaintiff's payments were not of this kind, however. They were voluntary in the legal sense, because there was no duress, and therefore could not be recovered back, but the continued protest made it clear that there was at least no acquiescence in the action of the supreme council, and that the reduced rate was paid only because the council would accept no more. The defendant was not misled or deceived, and in this respect the case seems to me even stronger than the case of Daix, whose silence was capable of being construed to be acquiescence, whereas the plaintiff's continued protests were at

least notice to the council that his opinion of the by-law remained unchanged.

A new trial is refused, and judgment is directed upon the verdict in favor of the plaintiff. To the refusal to enter judgment for the defendant notwithstanding the verdict, an exception is sealed.