## McALARNEY v. SUPREME COUNCIL A. L. H.

### (Circuit Court, E. D. Pennsylvania. August 1, 1904.)

#### No. 17.

1. MUTUAL BENEFIT INSURANCE—CONTRACTS—BREACH—RESCISSION—BY-LAWS.

   Where an incorporated mutual benefit association, without legal right so to do, renounced liability on certain of its insurance contracts by the adoption of a by-law reducing the amount payable on such contracts below that which it had contracted to pay, and by making assessments on the new basis and notifying members of the reduction, a member who had performed the contract on his part, and who had not consented to such reduction, might, at his election, treat the contract as rescinded, and sue to recover the amount paid.

2. SAME—LACHES—CHANGE OF POSITION.

   Where defendant mutual benefit association renounced its liability to pay the amount specified in plaintiff's contract of insurance, the fact that during three years which elapsed between such breach of contract and the date plaintiff elected to rescind the same, more than 3,000 members of the association had died or withdrawn, and that 325 new members had joined the association without knowledge of plaintiff's claim to recover the

amount paid on his contract so broken, did not constitute such a change of position by defendant as to preclude plaintiff from recovering because of laches.

Joseph H. Brinton, for plaintiff.

Murdoch Kendrick, J. F. B. Atkin, and Frank P. Prichard, for defendant.

HOLLAND, District Judge. This is a suit for an anticipatory breach of contract on a policy of insurance, for the assessments paid by the plaintiff to defendant during the life of the policy. The plaintiff became a member of the defendant's subordinate lodge, known as "Anthracite Lodge No. 49," located in Philadelphia, on April 24, 1883, and received from the defendant a death benefit certificate in the sum of $5,000. Plaintiff continued to pay his insurance on the certificate for this amount until October 1, 1900, when the defendant reduced the amount of the certificate from $5,000 to $2,000, and levied an assessment, payable October 1, 1900, which the defendant did not pay, and on November 1, 1900, he was suspended by the lodge and his certificate forfeited. Discovering the illegality of the by-law reducing these certificates, the defendant, at its sessions in August, 1903, amended its by-law making this reduction so as to read as follows:

"Two thousand dollars shall be the highest amount paid by the order on the death of a member. This sum shall be paid on the death of every member holding a certificate of two thousand dollars. * * * Provided, however, that nothing herein contained shall be construed to in any way impair the obligation of any benefit certificate heretofore issued for a larger or smaller amount than that authorized by the provisions of this by-law."

A number of similar suits have been brought, two of which were passed upon in this jurisdiction. These two suits arose out of the same circumstances, to wit, an enactment by the defendant of a by-law reducing certificates from $5,000 to $2,000. Both suits were appealed and passed upon by the Circuit Court. An examination of these cases establishes the following:

"Where an incorporated fraternal benefit association, which has entered into insurance contracts with its members, without legal right renounces such contracts by the adoption of a by-law reducing the amount payable on the same below that which it contracted to pay, and putting such law into effect by making assessments on the new basis and notifying members of the reduction, a member who has performed the contract on his part and who has not consented to such reduction may, at his election, treat the contract as rescinded, and sue at once to recover the amount he has paid thereon (Supreme Council v. Black, 123 Fed. 650, 59 C. C. A. 414; Black v. Supreme Council A. L. H. [C. C.] 120 Fed. 580), and it is immaterial in such an action what use the association has made of the money so paid; nor is it any defense against its legal liability for breach of the contract that its charter and laws made no provisions for receiving funds to discharge such obligations, when it had power to make the contracts (Black v. Supreme Council A. L. H., supra), and that such contracts are made by it as a legal entity, and in an action for breach of such a contract the internal affairs of the corporation and the equities of its members inter sese are matters which are immaterial and which cannot affect its liability (Black v. Supreme Council A. L. H., supra), and, further, that in a suit such as this in question, an affidavit of defense stating generally that by reason of plaintiff's delay in electing to rescind the association has altered its position to its prejudice, without setting out in detail any facts to

support such statement, and where the association has always denied and still denies plaintiff's right to rescind, is insufficient to state a defense (Daix v. Supreme Council A. L. H. [C. C.] 127 Fed. 374)."

In the last case, Daix did not notify the defendant that he intended to treat the contract as rescinded and bring suit for the recovery of the amount paid until two years and three months thereafter. The Circuit Court of Appeals affirmed this case (130 Fed. 101), and held that the right of a member to elect to treat the contract as rescinded and recover the payments made by him was not lost by delay so long as he has not recognized the illegal action by the payment of other assessments, or done anything to mislead the association to its prejudice. The rights of the plaintiff upon his certificate of insurance are nearly all settled.

The defendant, in the affidavit of defense, however, contends that in this case it has shown a state of facts sufficiently set forth to prevent the recovery of the plaintiff, in consequence of his delay and the position of the association having altered to its injury, in that, between November 1, 1903, and May 10, 1904, when suit was brought, 3,000 members had died or withdrawn, upon whom assessments should have been made for this liability, and that 325 members have come in during that time without knowledge of this claim of the plaintiff, and, as there was no fund provided by which such claims could be paid, these new members would be required to pay their share of a sum to meet this obligation in addition to the regular and ordinary dues on the certificates; and the further defense is made that on May 24th, upon receiving notice of the suit, the defendant notified the plaintiff that it would put his benefit certificate in force, and tender to him all rights and privileges of membership, including the rights under his benefit certificate, provided that he would pay to the order the amount of the assessments, which would have been paid by him had he remained a member to date of this notice, and it claims that that offer was made at that time, because, prior to the bringing of suit by the plaintiff, defendant claims to have had no knowledge that plaintiff claimed a breach of contract because of the amendment passed in August, 1900. The delay of the plaintiff does not relieve the defendant, unless, as was said in Daix v. Supreme Council (C. C.) 127 Fed. 374, in consequence of such delay the position of the association has been altered to its injury.

The defendant alleges that the position of the association has been altered to its injury, and in support of this proposition sets forth the fact that 3,000 members had either died or withdrawn between November 1, 1900, and May 10, 1904, and that 325 new members, who were not aware of this claim, came in. Admitting the full force of this statement, and that, in consequence, the defendant is less able to pay, and that it may entail additional expense upon the new members, who were not connected with the organization at the time of the plaintiff's suspension, we cannot see how this can be admitted as a defense. In Black v. Supreme Council, supra, Judge Dallas held that:

"Such contracts are made by the defendant as a legal entity, and in an action for breach of such a contract the internal affairs of the corporation and the equities of its members inter sese are matters which are immaterial and which cannot affect its liability."

The very nature of the business in which a mutual life insurance company is engaged involves the process of dropping out of old and taking in new members, and the latter connect themselves therewith for the benefits of the insurance guarantied by their certificates, in consideration for which they pay certain stipulated sums, and impliedly assume their respective shares of all lawful liabilities of the association not excluded by their contract. If this had been a contract on the part of the defendant at a certain time in the future to convey to the plaintiff a certain piece of real estate owned by the defendant at the time of the execution of the contract, upon the plaintiff paying to it a certain stipulated sum at certain stipulated times, and the defendant, by some action of itself, or notice to the plaintiff, informed him of an anticipatory breach of this contract, and the plaintiff ceased the payment of the stipulated installments, and remained silent for three years and six months, and in the meantime the defendant, in the regular order of its business, disposed of this real estate, thereby placing itself in the disadvantageous position of being unable to deliver the property, it might be held that, in consequence of the plaintiff's silence, the defendant's position had been altered to its injury. But it does not appear that, even if the plaintiff had notified the defendant of his election to treat the contract as rescinded, there would have been any difference in the result as to the death and decrease of membership, or that any less new members would have joined; and, even if the knowledge of this obligation had deterred new members from connecting themselves with the association, these incidents were mere matters of internal management, and would result from the nature of the business in which they were engaged.

The case of Susquehanna Mutual Fire Insurance Company v. Oberholtzer, 172 Pa. 223, 32 Atl. 1105, 1108, cited by defendant, is not in point. In that case Oberholtzer was endeavoring to relieve himself of his share of the liabilities of this mutual fire insurance company, which occurred during the life of his policy, upon the ground of fraud at the execution thereof. He had, however, acquiesced in the conditions of his policy, and paid assessments on the same for a year, and enjoyed the protection afforded under the provisions of the policy. During that time these liabilities had attached, and it was held by the court that his silence during that time and his acquiescence in the conditions of the policy was a waiver of his claim to have the contract declared void because of fraud which induced it, and it was the duty of the officers to insist on the equities of the members as against any one of them. It was manifestly unjust to permit Oberholtzer to escape his share of the liabilities, which occurred during the existence of his policy, during which times he enjoyed the same benefits as other members, and to shift those liabilities upon his fellow members, who enjoyed no greater protection than he. The court was considering the equities existing among members in full standing, and the reasoning does not apply to a case such as the one at bar, where the organization itself, through its authorized officers, had rescinded a contract of insurance with one of its policy holders, who had performed his part of the agreement up to the time of such arbitrary renunciation, and who did not consent to it. He has enjoyed no benefits for which he is under obliga-

tion to the association, or any of its individual members; nor were there any liabilities thrust upon him between the time of his expulsion and the time of bringing suit, which will be shifted from his shoulders to those of other members, who would have no just right to bear them more than himself. It was the wrongful act of the association, through its officers, that brought about the liability to the plaintiff, and his right to reimbursement for the injury resulting therefrom cannot be defeated because of a change of membership in the organization between the time of their wrongful act and the assertion of plaintiff's right, so long as he has done nothing by act or delay to mislead the association to its injury.

Nor does the notice sent the plaintiff May 24, 1904, notifying him of defendant's willingness to reinstate his benefit certificate and extend to him all rights and privileges of membership upon his payment to the order of the amount of the assessments, which would have been paid by him had he remained a member, relieve them of this liability. The defendant in this case, by enactment of its by-law reducing the amount of a plaintiff's benefit certificate, in effect renounced its contract with him, and as he, in his refusal to pay the assessments, accepted this situation and treated the contract as at an end, and elected to rescind the same by bringing his suit for a recovery of the installments previously paid, the defendant cannot afterward change its mind, and require the plaintiff to abandon his election and accept performance of the contract, or agree to a reinstatement of its provisions. New Brunswick & Canada Railway Co. v. E. S. Wheeler & Co. (C. C.) 12 Fed. 377.

The plaintiff is entitled to judgment for want of a sufficient affidavit of defense, and the only other question involved is as to whether or not judgment shall be entered for the sum of $2,009.20, together with interest from May 10, 1904, or the amount of $1,931.40, which the defendant acknowledges to have been paid by the plaintiff during his membership. The plaintiff alleges the former sum to have been paid. The affidavit of defense agrees that the latter amount has been paid, but does not deny specifically the payment of the difference. In the absence of a denial of payment of this amount, we think the plaintiff is entitled to recover.

Judgment will therefore be entered for the sum of $2,009.20, with interest from the date of the commencement of suit, to wit, May 10, 1904.