### LEWIS v. NEW YORK LIFE INS. CO.

(Circuit Court, E. D. Pennsylvania. November 15, 1909.)

No. 632, April Sess. 1909.

INSURANCE (§ 198*)—RESCISSION OF LIFE INSURANCE CONTRACT—RIGHT OF INSURED—REPUDIATION BY INSURER.

Plaintiff held a policy of life insurance from defendant, by the terms of which he was entitled to borrow from defendant from time to time specified sums on the sole security of the policy. After having secured one loan, he became dissatisfied with the policy, and applied to defendant's agent to know how much more he was entitled to borrow, stating his intention to then allow the policy to lapse. He was given the information and applied for a loan of the amount, and his application was forwarded to the defendant; but he was told by the agent that no further loan would be made him. Held, that he was not entitled to treat such statement as a repudiation of the contract and recover the premiums paid, both because he had first himself announced his intention of abandoning the contract, and because the provision for loans was only an incidental and collateral term of the contract, not necessarily connected with the contract to insure, and a breach of which was not a repudiation of the principal contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 459; Dec. Dig. § 198.*]

Action by Daniel C. Lewis against the New York Life Insurance Company. Plaintiff moves for new trial. Motion denied.

Burr, Brown & Lloyd, for plaintiff.
Dickson, Beitler & McCouch, for defendant.

J. B. McPHERSON, District Judge. For present purposes the facts of this case may be stated as follows:

The plaintiff was insured in the defendant company for $30,800, and his policy also contained a separable provision that after payment of a certain number of premiums he should have the right to borrow specified sums of money on the sole security of the policy. In the spring of 1908 he exercised this right and borrowed $1,300, pledging the policy as security. Toward the end of May, 1909, being dissatisfied with the nonparticipating feature of his contract, he was disposed to abandon it; but before taking that step he wished to borrow all the rest of the money to which he was entitled. He wished to borrow it, because he was not bound to repay the so-called "loans" made under the policy, and in effect, therefore, they were sums at which the company was willing to buy the policy from time to time. It had no technical "surrender value"; but the loan feature gave it a real value of substantially the same character. He therefore inquired at the company's Philadelphia office how much more money he could borrow, saying that he wanted "to borrow that amount of money and just let the policy lapse." Naturally the company were reluctant to lose a policy holder if the loss could be prevented, and accordingly a direct answer to his inquiry was evaded, while other forms of policy were suggested that might meet his objections. He declared his willingness to consider these suggestions, and some negotiation followed along this line during the month of June; but nothing came of the effort. His policy was in the company's possession, in pledge for the $1,300 transaction; but a copy was furnished to him on June 29th, and from this it appeared plainly that he was entitled to borrow $640 more. The annual premium of $960 was payable on July 12th, and he was informed that if he made this payment he would be entitled to borrow a total of $2,556—less, of course, the $1,300 that he had already received. The company's letter conveying this information said nothing about the amount of "loan" to which the plaintiff was entitled on June 29th, and it is clear that the company was still endeavoring, either to persuade him to remain a policy holder in some form or other, or at least to secure one more premium before the policy was permitted to lapse. The company's evasions and lack of frankness deserve reprobation; but they did not deceive the plaintiff. He is more than usually intelligent, and he knew from his policy exactly how much more money he was entitled to borrow; and, moreover, he had consulted counsel on June 23d and was fully informed about his legal rights. On July 7th, after an interview in which the company's cashier informed him that he was not entitled to borrow any more money, the plaintiff wrote a letter making a formal demand for an immediate loan of $640, and delivered the letter at the Philadelphia office on the same day. He knew that the demand must go to New York to be acted on at the home office, and on July 9th he inquired at the cashier's office in Philadelphia whether a reply had been received. He was informed that nothing had yet been heard, whereupon he reported to his counsel, and together they paid a second visit to the office of the cashier. Being informed again that he could get nothing more upon the policy, he brought suit upon the same day, without waiting longer for the answer from New York.

Obviously, in one aspect of the case, there was a question for the jury whether the suit had not been prematurely brought—whether the plaintiff had waited a reasonable time to allow the home office to reply to his demand. He could have safely delayed suit for two more days, and it did not appear that the cashier was authorized to speak for the company and to refuse the loan. Moreover, there was a dispute in the evidence about the statements that were made by the cashier. and this, also, would have required submission to the jury, if the company had not admitted its liability for $640, and if the court had not been of opinion that no more could be recovered. Upon the present motion, therefore, I have assumed the plaintiff's version of the facts to be true, and have also treated the cashier as the company's representative. In this situation the question to be considered is whether the plaintiff was entitled to rescind the contract and recover the premiums previously paid, less the credit of $1,300. To support his contention he relies upon the case of Supreme Council v. Black, 123 Fed. 650, 59 C. C. A. 414; but for reasons that were stated in the charge. and need not be repeated now, I am of opinion that the case referred to does not govern the present controversy. In addition to the foregoing facts it is material to observe that on July 9th, when the plaintiff had his final interview with the cashier, he had himself abandoned his connection with the company, as will appear by the following extract from his cross-examination:

"Q. You had already taken out a policy of a similar amount in another company?
"A. Yes.
"Q. And you were intending to give up this policy, were you not?
"A. Yes, sir."

It is therefore evident, I think, that the two cases are materially different. In Black's Case the company were attempting to compel a policy holder to submit to a vital change in his contract, while he desired to go on with the agreement in its original form. In the present case the policy holder himself intended, not merely to change, but to sever, his relation with the company; his reason being that the policy was too onerous to maintain. He not only did not wish to go on with the agreement, but he had taken the decisive step of giving it up. Being properly desirous, however, to realize out of the abandoned policy as much as possible, he asked for a "loan" to the full extent authorized by the contract, intending to take the money, as he had a perfect right to do, without either purpose or obligation to repay it. If it had not been for what I now assume to be the needless obstructions that were put in his way by the superserviceable agent of the company, the transaction would have been closed with the utmost simplicity, and he would have received, and been satisfied with, the sum of $640, which was the amount still available upon the policy, and was all he expected or was entitled to obtain. Being unexpectedly forced, however, into a situation where a possible opportunity to rescind seemed practically thrust upon him, he not unnaturally shifted his ground, and now seeks to put on the character of a policy holder who has been denied a material right under a contract which he was anxious to continue, but was reluctantly compelled to give up. The real

condition of affairs was so distinctly different that, as it seems to me, Supreme Council v. Black, supra, cannot properly be applied. The injury he suffered was the loss of the remaining loan value of his policy, and this he has been allowed to recover. I may, perhaps, refer again to the charge delivered at the trial for a somewhat fuller state-ment of the reasons that led me to direct a verdict for the sum admit-ted to be due, and not for the full amount of the claim.

It is also urged on behalf of the defendant that the principal contract between the parties was the agreement to pay $30,800 upon the plain-tiff's death, or at the expiration of the stated period, and that this con-tract was in no respect interfered with by the defendant; whereas, in Black's Case, the company's interference with the sum insured is the only ground of the decision. It is argued that the defendant's agree-ment to lend specified sums from time to time was incidental and col-lateral, and that an action for its breach would lie, although the prin-cipal contract had not been disturbed. I think this position is sound, and that the agreement to lend is in effect an independent undertaking. not necessarily connected with the contract to insure. The case of New York Life Ins. Co. v. Pope, 68 S. W. 851, 24 Ky. Law Rep. 485, decided by the Court of Appeals of Kentucky, inferentially supports this contention, although the measure of damages there laid down does not seem to be applicable to the facts now in proof. But the right to rescind was denied, although the insured applied for a loan and was refused.

A new trial is refused.