## DAVIES et ux. v. SUN LIFE ASSUR. CO. OF CANADA.

### No. 20700.

District Court, W. D. Washington, N. D.
Oct. 12, 1932.

Kahin & Carmody, of Seattle, Wash., for plaintiffs.

Eggerman & Rosling, of Seattle, Wash., for defendant.

CUSHMAN, District Judge (after stating the facts as above).

Concerning the measure of damages for the wrongful refusal of an insurance company to carry out its contract of insurance it has been said (7 Couch on Insurance, § 1870):

"Sec. 1870. *Wrongful Breach or Termination of Contract by Insurer.* Although there is no doubt that the wrongful refusal of an insurance company to carry out its contract of insurance gives a right of action to the injured party for the damages sustained by reason of such breach or repudiation of the contract, there does seem to be an irreconcilable conflict of authority as to the amount of recovery, or measure of damages, for the wrongful cancelation, repudiation, or termination of the contract of insurance by the insurer. In fact, there are well established rules or lines of authority which are in direct conflict, as well as divers variations from such rules. Under the rule, which is sometimes spoken of as the majority rule, the insured may recover as damages the amount of premiums paid, or premiums and interest, where there has been a wrongful repudiation of the contract by the insurer, and the insured has elected to rescind the contract, rather than have it enforced. Support for this rule is found in those cases which hold that the insured may recover premiums and interest without deduction for the risk while carried, as well as in those which permit a recovery of premiums and interest, without considering a deduction for the benefit derived by the insured during the time that the policy was in force; also, in those cases which

have held that the insured was entitled to recover the amount paid, without deduction, and in which it is uncertain whether interest was included, (cited to support the text: Henderson v. Supreme Council, A. L. H. (C. C.) 120 F. 585; Supreme Council, A. L. H. v. Black, 59 C. C. A. 414, 123 F. 650, affirming (C. C.) 120 F. 580, certiorari denied in 191 U. S. 568, 48 L. Ed. 305, 24 S. Ct. 841) and in those which, without considering the question of deduction for the risk carried, have reached a similar conclusion. (cited to support the text: Michaelsen v. Security M. L. Ins. Co., 83 C. C. A. 334, 154 F. 356, 12 Ann. Cas. 37, writ of certiorari denied in 207 U. S. 588, 52 L. Ed. 353, 28 S. Ct. 255.) It has been said that the rule which denies deductions on account of intermediate benefits derived from the protection had during the existence of the policy rests upon the well-established principle that a party to an entire contract, who has partially performed it, cannot, upon subsequently abandoning it without fault upon the part of the other party, or his consent thereto, receive credit for the part performed. Another rule, and the one which has the support of the United States Supreme Court, is that the measure of damages for wrongful termination of a contract of insurance is the value of the policy at the date of the breach of contract, with interest, and less any obligations due, (cited to support the text: Lovell v. St. Louis M. L. Ins. Co., 111 U. S. 264, 28 L. Ed. 423, 4 S. Ct. 390; New York L. Ins. Co. v. Statham, 93 U. S. 24, 23 L. Ed. 789; 19 Am. Rep. 512 [note]; Mutual R. F. Life Asso. v. Ferrenbach [C. C. A.] 144 F. 342 [7 L. R. A. (N. S.) 1163]; Capital City Ben. Soc. v. Travers [55 App. D. C. 214], 4 F. (2d) 290) which, it has been said, is the difference between the amount paid and the cost of carrying the risk, or the amount of the policy, less the cost of carrying it to maturity, had it remained in force, with all amounts valued as of the date of the cancelation. (cited to support the text: Mutual R. F. Life Asso. v. Ferrenbach, supra; Ferrenbach v. Mutual R. F. Life Asso. [C. C. A.] 121 F. 945, writ of certiorari denied in 191 U. S. 569, 48 L. Ed. 306, 24 S. Ct. 842.) In Arkansas, a denial of liability on an accident policy justifies the insured, not in default, in treating the contract as breached, and suing for gross damages, the measure of which is the amount insurer would have been required to pay him under the contract, if it had not breached it, reduced to its present value. Still another rule is that the measure of damages is the cost of similar insurance as of the date of the breach; that is, the cost of replacement on the same terms in another sound company, at the rate the insured would have had to pay as of the date of wrongful termination of the original policy. According to a North Carolina decision, if a policy is wrongfully canceled, a recovery may be had by insured for premiums paid, with interest, in a civil action against insurer for money had and received to his use, or upon the implied promise to save him harmless, the amount of damages being the sum necessary to enable him to obtain another policy. *And in the case of a wrongful cancelation of a life insurance policy when the insured's condition is such that he cannot reinsure, the measure of damages is the present value of the principal sum for which the policy was written, reduced by the amount of the premiums that the insured must pay.* (Italics the court's.)

"The conflict of authority also extends to breach of contracts of mutual benefit societies, the measure of damages in some cases being regarded as the value of the policy at the time of the breach, while in others it is the dues or assessments paid, with interest, and in still others no recovery is allowed. Thus, it has been held that the measure of damages is the value of the policy at the time of the breach. (cited to support the text: Mutual R. F. Life Asso. v. Ferrenbach [C. C. A.] 144 F. 342 [7 L. R. A. (N. S.) 1163].) And where insured dies subsequent to a wrongful cancelation, the measure of damages is the value of the policy, which is the amount of the benefit specified therein, together with interest from the date of cancelation, less the unpaid assessments due at that time. (cited to support the text: Capital City Ben. Soc. v. Travers [55 App. D. C. 214], 4 F. (2d) 290.) Other authorities support the rule that the measure of damages for breach of a contract of mutual benefit insurance is the amount of assessments and dues paid. (cited to support the text: Supreme Council, A. L. H. v. Black, supra, affirming [C. C.] 120 F. 580 and certiorari denied in 191 U. S. 568. [24 S. Ct. 841, 48 L. Ed. 305]; Michaelsen v. Security M. L. Ins. Co. [C. C. A.] 154 F. 356, certiorari denied in 207 U. S. 588 [28 S. Ct. 255, 52 L. Ed. 353]; Supreme Council, A. L. H. v. Daix [C. C. A.] 130 F. 101, affirming [C. C.] 127 F. 374; Lippincott v. Supreme Council, A. L. H. [C. C.] 130 F. 483, reversed on other grounds in [C. C. A.] 134 F. 824 [69 L. R. A. 803]; McAlarney v. Supreme Council, A. L. H. [C. C.] 131 F. 538, reversed on other grounds in [C. C. A.] 135 F. 72.) It is also held that, where a member is illegally

expelled from a mutual benefit association, credit will not be allowed as against the recovery of premiums paid for the insurance carried, while the contract was in force. Then again, it is held that under certain circumstances no recovery can be had, as, for example, where there are no live assets or reserve fund, or the recovery, if allowed, would necessarily come out of reserve funds held in trust for the members. * * * "

To what extent the asserted conflict in the decisions may be reconciled it is not now necessary to consider, nor is it necessary for the court to now determine the rule as to the measure of damages that should be applied for enough appears to show that the right to damages in excess of $3,000 is not beyond controversy—that such claim is not merely colorable and to show that the jurisdictional amount is therefore in controversy. That such is the case was pointed out by the Circuit Court of Appeals for the 8th Circuit in Washington County, Nebraska v. Williams, 111 F. 801. In that case the suit was upon certain bonds issued by a county. The county levied taxes raising money for the payment of the bonds for twenty-eight years at the end of which time, acting by its board of supervisors, it refused to pay further interest on the obligation and denied liability. The Court of Appeals, in considering the point here in question, said, at page 810 of 111 F.:

" * * * Three other questions are presented by the records, which remain to be considered. The first of these is whether the holders of the obligations in suit at the time the actions were brought could rightfully demand judgment against the county for the full amount of the several obligations and accrued interest. The second is whether the lower court had jurisdiction of the law case, in the event that the last question is answered in the negative. * * *

"The trial court held, and in the law case rendered its judgment upon the theory, that the refusal of the county on September 14, 1899, to levy further taxes for the purpose of making payments on the obligations in suit, rendered the entire amount of the acknowledged indebtedness immediately payable, notwithstanding the agreement that it should be paid only in annual installments, each installment to be such a sum as might be realized by an annual levy of one mill on the dollar. In so deciding, the trial judge seems to have applied a doctrine which has been applied frequently in actions for the breach of a certain class of contracts, but,

in our judgment, is not applicable to a case like the one in hand. The doctrine in question, as stated by the supreme court in Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953, is, in substance, that where one party to an agreement which is mutually executory, before the time for performance on his part arrives, gives notice that he will not perform it, the opposite party is at liberty to consider himself absolved from all obligations to perform the agreement, and may sue at once for all damages occasioned by the anticipatory breach, or, if he so elects, may wait for the time of performance to arrive, treating the contract in the meantime as prospectively binding for the exercise of this option. In the case last cited, where the subject was elaborately considered and all of the authorities were reviewed, it was held that the doctrine in question has its limitations; that it is only applicable to contracts that are mutually executory, such as contracts for marriage, for the rendition of services, or for the transportation or the sale and delivery of property; and that it has no application to money contracts, pure and simple, where one party has fully performed his undertaking, and all that remains for the opposite party to do is to pay a certain sum of money at a certain time or times. Roehm v. Horst, 178 U. S. 1, 17–19, 20 S. Ct. 780, 44 L. Ed. 953. See, also, Nichols v. Steel Co., 137 N. Y. 471, 487, 33 N. E. 561. It has never been held, so far as we have been able to discover, that the holder of a promissory note, or other written agreement to pay a sum of money at a designated time, can maintain an action thereon, in advance of its maturity, because the maker thereof has announced his intention not to pay it. Now, the obligations in suit can be regarded in no other light than a contract on the part of the county to pay a given sum of money annually until such time as the amount of its donation to the railroad company, and accrued interest thereon, was fully discharged. It was not stipulated in the agreement evidenced by the obligations that a failure to pay one of the annual installments should render the entire amount of the obligation immediately payable, nor can it be successfully claimed that the notice given by the county that it would make no further payments had that effect. If the plaintiff's view is maintained, that the refusal of the county to pay rendered the entire debt immediately payable, and the obligations are enforced accordingly, the county would be compelled to do that which it never promised to do. Such conduct on the part of the county merely rendered it

amenable to an action for such part of the indebtedness as was then due according to the terms of the donation. It results from this view that the trial court erred in the law case in rendering a judgment for the full amount of the five obligations, and the accrued interest, which were sued upon in that case. The recovery should have been limited to such annual installments as were then due.

"Passing to the second question above stated, we observe that it does not follow from the views last expressed that the trial court was without jurisdiction of the law case because the sum recoverable therein was less than $2,000, exclusive of interest and costs. The amount claimed in the declaration or complaint, not the amount of the recovery, is the test of jurisdiction; and the fact that a sum in excess of $2,000, exclusive of interest and costs, was claimed, gave the trial court jurisdiction to render a judgment for a less amount, unless this court is able to find that a demand for a sum in excess of $2,000 was interposed in bad faith, for no other purpose than to give the federal court jurisdiction. Bank of Arapahoe v. David Bradley & Co., 19 C. C. A. 206, 72 F. 867, 36 U. S. App. 519. After a careful examination of the records, we fail to discover any evidence which would warrant this court in holding that the plaintiff in the law case demanded a judgment for the full amount of the five obligations by him held, either knowing or believing that he was not entitled to recover the sum claimed, and for the sole purpose of investing the federal court with jurisdiction. Besides, the fact that the learned judge of the trial court sustained the plaintiff's view, and rendered a judgment for the full amount of his claim, should be regarded as sufficient evidence that the claim as made was preferred in good faith, under an honest belief that it was tenable. It follows, therefore, that the contention on the part of the county that the trial court had no jurisdiction of the law case must be overruled."

The motion to remand upon the point herein considered should be denied, but, as it appeared upon the presentation of the motion that the plaintiffs' attorneys were relying upon grounds not here considered, it is ordered that the motion to remand be assigned for further hearing on the 17th day of October, 1932, at 10 o'clock in the forenoon.[1]

The clerk is directed to notify the attorneys for the parties of this ruling and order.

---

[1] No written opinion was handed down at the later hearing on motion to remand.